**COMMONWEALTH of Pennsylvania,**
**Appellee**

**v.**

**Dustin SCOTT, Appellant.**

Superior Court of Pennsylvania.

Argued April 17, 2013.

Filed July 2, 2013.

Reargument Denied Sept. 10, 2013.

Lance T. Marshall, State College, for appellant.

George N. Zanic, District Attorney, Huntingdon, for Commonwealth, appellee.

BEFORE: FORD ELLIOTT, P.J.E., WECHT, J., and COLVILLE, J.*

OPINION BY WECHT, J.:

Dustin Scott ["Appellant"] appeals the judgment of sentence imposed following a jury trial on charges of attempted murder,[1] conspiracy,[2] aggravated assault,[3] and

---

* Retired Senior Judge assigned to the Superior Court.

1. 18 Pa.C.S.A. §§ 901(a), 2502(a).

2. 18 Pa.C.S.A. § 903(c).

recklessly endangering another person ["REAP"].[4] Appellant was convicted of aggravated assault and REAP, and sentenced to five to ten years of incarceration. Upon review, we reverse.

The charges arose from a curious and violent episode that occurred in Huntingdon Borough on May 11, 2011. Appellant was in the basement apartment of his friend, Bill Ledford, along with additional friends Josh Lemin and Rex Cuff. Notes of Testimony ["N.T."], 3/22/12, at 66–67. The group was engaged in smoking, snorting, and injecting bath salts, a lawful practice at the time.[5] *Id*, at 67, 69. The men were fearful because an individual named Jeremiah Shoop had attempted to "rob" Appellant's house the night before, and because Shoop now was making death threats against the men. *Id*, at 182–84. While the group was in the apartment, Ledford received threatening phone calls from Shoop. *Id*, at 269.

Shoop soon arrived at Ledford's apartment, began yelling threats at the occupants, and tried to pry the front door open. *Id*, at 270–71, 281. That door did not have a doorknob. Rather, a belt was tied through the hole where the doorknob should have been, and was secured to nearby water pipes inside of the apartment. *Id*, at 188, 194, 271, 290. Ledford, who was "well-armed" (*id*, at 269), and who had distributed guns to his friends upon Shoop's arrival (*id*, at 270), fired warning shots at the bottom of the door. *Id*, at 274. At some point, someone turned the lights off, and the apartment became dark. *Id*, at 200, 224. Ledford instructed everyone inside to lie down. *Id*, at 198, 275–76. Ledford then ran to the back of the apartment, saying that he was out of bullets. *Id*, at 275–76. As Ledford was running, he also was yelling, "They're in," and "shoot, shoot!" *Id.*

Appellant looked around a corner and saw the standing silhouette of a man. *Id*, at 276. The silhouette's arm was extended, and was pulling the trigger of a gun that was either misfiring or "dry-firing." *Id*, at 277. Appellant believed that his other friends were lying on the ground, as he was. *Id*, at 276. Appellant testified that he believed the standing silhouette was Shoop and that he believed Shoop was shooting at him. *Id*, at 276–277. Appellant fired shots back for protection. *Id*, at 276–81. The silhouette actually was that of Appellant's friend, Lemin. Upon discovering that he had shot his friend, Appellant grabbed a towel and gave it to the aptly named Cuff to tie off Lemin's bullet wound. *Id*, at 281–82.

Appellant was charged with attempted murder, conspiracy, aggravated assault, and REAP. The Commonwealth identified Shoop as the victim in regard to Appellant's attempted murder and conspiracy charges, and Lemin as the victim in regard to the aggravated assault and REAP charges. The Commonwealth alleged that Appellant had acted recklessly in shooting at Lemin.

The case proceeded to a jury trial. With respect to the aggravated assault charge, the trial court instructed the jury only as to recklessness, omitting the other mental states that can establish aggravated assault. *Id.* at 361–62. At Appellant's request, the trial court provided the jury

---

3. 18 Pa.C.S.A. § 2702(a)(1).

4. 18 Pa.C.S.A. § 2705.

5. "Bath salts," the street name of a category of designer drugs that contain synthetic cathinones such as mephedrone, have since been designated a controlled substance. *See* 35 P.S. § 780–104(1)(iii)(17–25), (vii)(1–8), (viii)(1–9), enacted June 23, 2011, effective August 22, 2011.

with a self-defense instruction, but refused Appellant's additional request to instruct the jury regarding mistake-of-fact. Appellant was found not guilty of attempted murder and conspiracy, but was convicted of aggravated assault and REAP.

Appellant appealed. The trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant timely complied. He raises a single issue for our review: "Did [Appellant] present sufficient evidence to warrant an instruction regarding Pa.S.S.J.I. § 8.304—Ignorance or Mistake when [Appellant] mistakenly believed he was shooting an armed intruder threatening to kill his friend but later learned that he shot his friend?" Appellant's Brief at 4.

 In reviewing a jury charge, we are to determine "whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case." *Commonwealth v. Brown*, 911 A.2d 576, 582–83 (Pa.Super.2006). In so doing, we must view the charge as a whole, recognizing that the trial court is free to use its own form of expression in creating the charge. *Commonwealth v. Hamilton*, 766 A.2d 874, 878 (Pa.Super.2001). "[Our] key inquiry is whether the instruction on a particular issue adequately, accurately and clearly presents the law to the jury, and is sufficient to guide the jury in its deliberations." *Id.* It is well-settled that "the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal." *Brown*, 911 A.2d at 583.

 Significantly, Appellant proffered the theory of self-defense as to the charges related to Shoop, but proffered the theory of mistake-of-fact as to the charges related to Lemin. Appellant asserts that he was entitled to the jury charge on mistake because the record showed he mistook Lemin for Shoop, and shot at Lemin, believing that in doing so he was protecting himself and his friends. Appellant asserts that he shot Lemin by mistake, and necessarily lacked the *mens rea* required for aggravated assault and REAP.

Aggravated assault and REAP both encompass a *mens rea* of recklessness, which can be negated by a mistake-of-fact defense.

Aggravated assault is defined, in relevant part, as follows:

(a) **Offense defined.**—A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or **recklessly** under circumstances manifesting extreme indifference to the value of human life . . . .

18 Pa.C.S.A. § 2702(a)(1) (emphasis added).

REAP is defined as follows:

A person commits a misdemeanor of the second degree if he **recklessly** engages in conduct which places or may place another person in danger of death or serious bodily injury.

18 Pa.C.S.A. § 2705 (emphasis added).

The defense of mistake-of-fact is defined as:

Ignorance or mistake as to a matter of fact, for which there is reasonable explanation or excuse, is a defense if:

(1) the ignorance or mistake negatives the intent, knowledge, belief, recklessness, or negligence required to establish a material element of the offense; or

(2) the law provides that the state of mind established by such ignorance or mistake constitutes a defense.

18 Pa.C.S.A. § 304.

We have held that, under certain circumstances, a mistake of fact can disprove a required element of criminal intent:

It is well established that a bona fide, reasonable mistake of fact may, under certain circumstances, negate the element of criminal intent. 18 Pa.C.S.A. § 304 (providing, inter alia, that ignorance or mistake as to a matter of fact, for which there is a reasonable explanation or excuse, is a defense if "the ignorance or mistake negatives the intent, knowledge, recklessness, or negligence required to establish a material element of the offense"); *Commonwealth v. Compel*, 236 Pa.Super. 404, 344 A.2d 701 (1975); *Commonwealth v. Bollinger*, 197 Pa.Super. 492, 179 A.2d 253, 255 (1962). "It is not necessary that the facts be as the actor believed them to be; it is only necessary that he have 'a bona fide and reasonable belief in the existence of facts which, if they did exist, would render an act innocent.' *Commonwealth v. Lefever*, 151 Pa.Super. 351, 30 A.2d 364, 365 (1943). *See generally, Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952)." *Compel*, supra, at 702–03. When evidence of a mistake of fact is introduced, the Commonwealth retains the burden of proving the necessary criminal intent beyond a reasonable doubt. *Commonwealth v.*

*Cottam*, 420 Pa.Super. 311, 616 A.2d 988, 1000–01 (1992). In other words, the Commonwealth must prove either the absence of a bona fide, reasonable mistake, or that the mistake alleged would not have negated the intent necessary to prove the crime charged.

*Hamilton*, 766 A.2d at 878–79 (citations modified).

 The trial court suggested (and the learned dissent agrees) that the mistake of fact theory of defense was fairly encompassed within the self-defense charge (*see* N.T., 3/22/12, at 307, stating: "It seems to me that … you get [Appellant's mistake of fact defense theory] in self-defense."). The separate statutory codification of the two defenses refutes this suggestion. *See* 18 Pa.C.S.A. § 304 and 18 Pa.C.S.A. §§ 505–06. The trial court offered no rationale for declaring mistake-of-fact to be subsumed within self-defense, notwithstanding the legislative distinction. The General Assembly's distinct enumeration of these separate defenses compels the conclusion that, under the particular and peculiar circumstances of this two-victim case, both of the theories should have been presented to the jury.[6]

Ultimately, the trial court refused to give the mistake-of-fact instruction because it believed that instruction to be inconsistent with the self-defense instruction. Trial Court Opinion ["T.C.O."], 9/4/12, at 19–20. The trial court cited two cases in support of its ruling: *Commonwealth v. Hobson*, 484 Pa. 250, 398 A.2d

---

**6.** Were we to hold that the charge as given was adequate, we would condone an unclear jury instruction. The only time that "mistake" was used in the charge was in reference to Appellant's erroneous belief that the silhouette was shooting at him. The irrelevant mention of the word "mistake" does not suffice inferentially to inject the principles underlying a mistake-of-fact defense. In fashioning jury charges, a court may not imply the law to the jury. The court must not hint at a legal framework and assume that a jury will read between the lines. It is well-settled that jury instructions must "adequately, accurately and clearly present[ ] the law to the jury" in order to "guide the jury in its deliberations." *Hamilton*, 766 A.2d at 878. The trial court's instruction falls short of this standard.

1364 (1979), and *Commonwealth v. Harris*, 542 Pa. 134, 665 A.2d 1172 (1995). A review of those precedents reveals that they are inapposite to the circumstances presented to us here.

In *Hobson*, the defendant claimed that he shot the victim by accident. *Hobson*, 398 A.2d at 1366. The defendant asserted that:

> during a fight with [the victim], [he, the defendant,] pulled his gun from the waistband of his trousers and struck [the victim] on the side of the face with the barrel of the gun. Undaunted by the blow, [the victim] grabbed [the defendant's] hand and the gun. During the ensuing struggle the gun went off, fatally wounding [the victim].

*Id.* The defendant was charged with homicide. He requested jury instructions that included both a charge on self-defense and a charge on the defense of misadventure. *Id.* at 1368. The trial court provided only the instruction as to homicide by misadventure. Upon review, our Supreme Court pointed out that self-defense requires an element of intent, whereas misadventure requires an unintentional act, suggesting that the two defenses are mutually exclusive. *Id.* at 1368–69. Under the circumstances of the case, the Court held that the homicide by misadventure instruction adequately conveyed to the jury the applicable area of law. *Id.*, at 1369.

In *Hobson*, not only did the homicide by misadventure instruction suffice in the scenario presented; there also was but a single victim. Here, by contrast, Appellant was charged with four crimes involving two distinct victims. The trial court might well have been correct to rely upon *Hobson* had Appellant been charged with injuring only one victim. But that was not the case presented. Here, the trial record indicates that a reasonable jury could have

concluded that Appellant shot at Shoop intentionally, warranting a self-defense charge, but shot at Lemin mistakenly, warranting a mistake-of-fact charge. Quite obviously, the defenses are not mutually exclusive under these circumstances. The guidance provided in *Hobson* is not applicable to the case at hand.

*Harris* is distinguishable as well. In that case, the defendant was arguing with three individuals in his house, whereupon he went upstairs and retrieved his shotgun. *Harris*, 665 A.2d at 1173. The defendant returned with the gun, and shot one of the individuals with whom he had been arguing. *Id.* Like *Hobson*, *Harris* involved only one victim. The *Harris* defendant asserted that he shot in self-defense, because he saw the butt of a gun tucked into the victim's trousers. *Id.* However, the defendant also asserted that the shooting was an accident, testifying that the gun "went off" because the defendant was backing up and two individuals were trying to grab the gun. *Id.* at 1175. The Pennsylvania Supreme Court held that the evidence clearly established that the defendant did not fear immediate danger or death. *Id.* The Court also ruled that the defendant could not claim that he intentionally shot the victim while also claiming that the shooting was an accident. *Id.* "Under such circumstances [where the defendant denied that the shooting was intentional], therefore, a defense of self-defense is not available to such a person because it is mutually exclusive of the defense of accident or mistake." *Id.*

The relationship and availability of these two affirmative defenses is inherently dependent upon the circumstances of the particular case. Under the facts of both *Hobson* and *Harris*, the two defenses were mutually exclusive. However, under the facts of this case, the defenses can co-exist. Appellant claims that he intentionally shot

at Shoop in self-defense. However, Appellant asserts that he shot Lemin unintentionally, believing Lemin to be Shoop. Under these facts, we think it plain that self-defense and mistake-of-fact are not mutually exclusive.

Our Supreme Court has instructed that, when there is evidence of an affirmative defense, the trial court must charge the jury on that defense. *Hamilton,* 766 A.2d at 880. The jury then must determine whether the defense applies to the case at hand. A separate mistake-of-fact instruction was necessary here, in order to explain to the jury the law applicable to that affirmative defense, and in order to allow the jury properly to deliberate. The instruction should have been focused solely upon Appellant's charges as to his conduct toward Lemin, and Appellant's assertedly mistaken belief that Lemin was in fact Shoop. The trial court's refusal to give a mistake-of-fact instruction served to constrain the jury's deliberations in a manner inconsistent with our law and with the developed record.

█ In denying Appellant's request for a mistake-of-fact jury instruction, the trial court committed an abuse of discretion. Viewing the jury charge as a whole, the instruction failed to allow adequate deliberation on Appellant's affirmative defense theory as to the aggravated assault and REAP charges. Because it is possible that the jury might have accepted Appellant's mistake-of-fact defense theory, thereby acquitting him of aggravated assault and REAP, we find that the omission prejudiced Appellant, requiring a new trial. *See Commonwealth v. Lesher,* 473 Pa. 141, 373 A.2d 1088, 1093 (1977) (holding that jury instruction error constitutes reversible error, requiring a new trial, where correct instruction may have caused the jury to reach a different verdict).

We reverse and remand for a new trial, directing the court below to provide the jury with a separate mistake-of-fact instruction in the event that the record upon retrial is substantially similar to the one before us.

Judgment of sentence reversed. Remanded for a new trial. Jurisdiction relinquished.

COLVILLE, J. files a Dissenting Opinion.

DISSENTING OPINION BY COLVILLE, J.:

For the following reasons, I dissent.

At trial, the Commonwealth presented the attempted murder and conspiracy counts against Appellant with Shoop being the complainant and the counts of aggravated assault ("AA") and recklessly endangering another person ("REAP") with the complainant being Lemin. The Commonwealth's position was that, with respect to Lemin, Appellant had acted recklessly and had not intended to shoot him. Thus, the Commonwealth sought to establish the AA count based on recklessness.

Appellant sought a jury instruction regarding self defense and the defense of others. His position was that he believed he was firing at Shoop and, further, that he (Appellant) reasonably believed Shoop was trying to kill Appellant, Ledford and/or others in the apartment. The court issued a justification instruction to the jury.

Appellant also requested a mistake-of-fact instruction on the theory that, when he shot Lemin, Appellant had mistakenly believed the silhouette (Lemin) was Shoop. The trial court denied that request.

Both AA and REAP contain a *mens rea* of recklessness. More particularly, the AA statute under which Appellant was convicted reads in this way:

**(a) Offense defined.**—A person is guilty of [AA] if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life . . .

18 Pa.C.S.A. § 2702(a)(1).

The REAP statute is:

A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.

18 Pa.C.S.A. § 2705.

The statute governing the mistake-of-fact defense provides the following:

Ignorance or mistake as to a matter of fact, for which there is reasonable explanation or excuse, is a defense if:

(1) the ignorance or mistake negatives the intent, knowledge, belief, recklessness, or negligence required a establish a material element of the offense; or

(2) the law provides that the state of mind established by such ignorance or mistake constitutes a defense.

18 Pa.C.S.A. § 304 (emphasis added).

This Court has opined:

It is well established that a bona fide, reasonable mistake of fact may, under certain circumstances, negate the element of criminal intent. It is not necessary that the facts be as the actor believed them to be; it is only necessary that he have a bona fide and reasonable belief in the existence of facts which, if they did exist, would render an act innocent. When evidence of a mistake of fact is introduced, the Commonwealth retains the burden of proving the necessary criminal intent beyond a reasonable doubt. In other words, the Commonwealth must prove either the absence of a bona fide, reasonable mistake, or that the mistake alleged would not have negated the intent necessary to prove the crime charged.

*Commonwealth v. Hamilton*, 766 A.2d 874, 878–79 (Pa.Super.2001) (internal citations and quotations omitted).

The standard jury charge for ignorance or mistake of fact is as follows:

1. One of the material elements of the crime of [crime] that the Commonwealth must prove beyond reasonable doubt is that the defendant [intended [give specifics]] [knew [give specifics]] [believed [give specifics]] [recklessly [give specifics]] [negligently [give specifics]]. The defendant claims that this element has not been proven beyond a reasonable doubt because at the time of the alleged offense [he] [she] was reasonably [ignorant] [mistaken] concerning the facts in that [he] [she] [[give specifics]].

2. [Ignorance] [Mistake] as to a matter of fact for which there is a reasonable explanation or excuse is a defense if it negates the [intent] [knowledge] [belief] [recklessness] [negligence] required to establish an element of the crime. Thus, you must consider the evidence tending to show that the defendant was reasonably [ignorant] [mistaken] concerning the facts along with the other evidence in determining whether the Commonwealth has proven the required [intent] [knowledge] [belief] [recklessness] [negligence] beyond a reasonable doubt.

3. In a case where the issue of mistake or ignorance of fact is raised, you must decide whether there was such a mistake or lack of awareness of a fact, whether that mistake or ignorance was reasonable under the circumstances, and whether that mistake or ignorance shows that one of the elements of the

crime charged was not proved beyond a reasonable doubt.

4. To overcome this defense, the prosecution must prove, beyond a reasonable doubt, one of the following: (1) that the defendant did not have that mistaken belief [or that the defendant was not ignorant of the fact], (2) that the mistaken belief [or the ignorance of a fact] was not reasonable, or (3) that the mistake [or ignorance of a fact] did not prevent or eliminate the required element of [element].

[5. Let me illustrate what a mistake of fact might be. Suppose a person has a blue Ford, and parks it in the stadium parking lot. After the game, the person sees another blue Ford, and thinks it is actually his or her own car. If the person tries to enter it, it may be under a mistake as to the fact of whose car it is. In such a case you would have to decide, first, whether the person really believed this fact; you would then have to decide whether it was a reasonable mistake. Was the other Ford the same make and model; was it in the same general area in the parking lot; were there no distinguishing features? Finally, if the person did have the mistaken belief, and if making such a mistake was reasonable, you would have to decide whether that mistake eliminates an element of the crime. For example, if it were a crime to intentionally enter another person's car, the mistaken belief would mean that the individual here never intended to go into another person's car; the individual thought he or she was entering his or her own.]

Pa. SSJI (Crim) 8.304.[1]

To assess the propriety of jury instructions, this Court reviews the trial court's charge as a whole. *Commonwealth v.*

*Smith,* 609 Pa. 605, 17 A.3d 873, 906 (2011). A trial court has broad discretion in phrasing its instructions and may choose its own wording as long as the law is clearly, adequately, and accurately presented to the jurors. *Id.* There is error only where the trial court inaccurately states the law or otherwise abuses its discretion. *Id.* An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law. *Commonwealth v. Hoover,* 16 A.3d 1148, 1150 (Pa.Super.2011).

Appellant maintains there was evidence that could have led the jurors to conclude he reasonably mistook Lemin for Shoop. Starting from that premise, the thrust of Appellant's argument is this: Given Appellant's claim that he was—or would have been—justified in firing his gun at Shoop, and given that Appellant was reasonably mistaken in believing the silhouette was Shoop, Appellant's mistake of fact regarding the identity of the silhouette could have negated the conclusion that Appellant was acting recklessly toward Lemin. Thus, Appellant contends it was a reasonable mistake, not a criminally reckless act, to believe the silhouette was Shoop, to shoot at the silhouette and to wound Lemin mistakenly. Accordingly, Appellant maintains the court should have issued a mistake-of-fact instruction. For the reasons that follow, I would find that Appellant argument is incorrect.

At one point when the court and the parties were discussing Appellant's desire to have an instruction on mistake of fact given in addition to the justification charge, the court remarked, "It seems to me that . . . you get that in the self-defense." N.T., 03/22/12, at 307. Essentially, the court reasoned that the self-defense charge was sufficient to encom-

---

**1.** Subdivision five of the instruction is optional. *Id.* cmt.

pass Appellant's argument that he was reasonably mistaken about the identity of the silhouette. I find no bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law in the court's conclusion. In reaching this result, I note the justification charge given by the court was as follows:

> ... [I]t is the Commonwealth's burden to prove to you beyond a reasonable doubt that [Appellant] was not justified in his use of force. In this regard the Commonwealth must prove to you beyond a reasonable doubt that [Appellant] did not reasonably believe that he or another person was in immediate danger of death or serious bodily injury from Jeremiah Shoop at the time he used the force and that, therefore, his belief that it was necessary for him to use deadly force to protect himself and Mr. Ledford was unreasonable.
>
> Put another way: The Commonwealth must prove either that [Appellant] did not actually believe he and his friend were in danger of death or serious bodily injury such that he needed to use deadly force to defend himself or that while [Appellant] actually believed he needed to use such force, his belief was unreasonable in light of all the circumstances known to him.
>
> Keep this in mind. A person is justified in using deadly force against another not only when they are in actual danger of unlawful attack or [sic] but also when they **mistakenly but reasonably believe** that they are. A person is entitled to estimate the necessity for the force he employs under the circumstances as he reasonably believed them to be at the time.
>
> In the heat of conflict, a person who has been attacked ordinarily has neither time nor composure to evaluate carefully the danger and elements about how much force is needed to protect himself. Consider the realities of the situation faced by [Appellant] here when you determine whether the Commonwealth has proved beyond a reasonable doubt that either he did not believe he was actually in danger of death or serious bodily injury to the extent he needed to use deadly force or that while he did believe it, his belief was unreasonable.

Id. at 364 (emphasis added).

Upon reading the foregoing charge, it is apparent that, if the jurors believed Appellant mistakenly but reasonably believed he and/or his friends were in danger of unlawful attack from the silhouette—the person who was standing up while firing or trying to fire the handgun—the jurors could have concluded that Appellant was justified in shooting at that person. As such, the jurors could have acquitted Appellant of AA and REAP based on his mistaken belief of fact with regard to the silhouette.

I recognize that the mistake-of-fact defense, appearing at 18 Pa.C.S.A. § 304, is codified separately from self defense and the defense of others, those defenses being listed at 18 Pa.C.S.A. §§ 505–06. Giving a distinct mistake instruction consistent with Section 304 may have emphasized or brought into focus the jurors' option of acquitting Appellant of AA and REAP based on his claims that he factually mistook the silhouette and that he did not act recklessly—either in mistaking the silhouette or in shooting at it. Nevertheless, I cannot find the trial court acted abusively when it determined the justification charge as given was sufficiently broad to accommodate Appellant's defense that he acted lawfully in shooting at the silhouette because he reasonably believed the person standing up with the handgun was trying to kill him and/or his friends.

In conclusion, having reviewed the jury charge as a whole, I would find no abuse of

discretion by the trial court. Consequently, I would affirm Appellant's judgment of sentence. Accordingly, I dissent from the Majority.