J-S30038-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EPHRAIM SANTANE | |
| Appellant | No. 1320 EDA 2014 |

Appeal from the PCRA Order March 27, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0000479-2009

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                    **FILED JULY 08, 2015**

Appellant Ephraim Santane appeals from the March 27, 2014 order from the Philadelphia County Court of Common Pleas dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq*.  We affirm.

On September 26, 2008, Appellant was arrested and charged with numerous sexual offenses relating to the sexual abuse of his cousin's daughter.  The abuse stopped in 1999, when the victim was almost six years old, after the victim's sister observed Appellant engaged in a sexual act with the victim and informed their mother.  ***Commonwealth v. Santane***, No. 2630 EDA 2010, at 1-2 (Pa.Super. Aug. 24, 2011) (unpublished memorandum).  The victim's mother banished Appellant from the house and Appellant did not see the victim again.  ***Id.*** at 2.  While hospitalized in 2008

at a facility specializing in psychiatric and psychological treatment, the victim informed hospital staff of the abuse, and hospital staff reported the abuse to the Philadelphia Police Department. ***Id.***

A March 2010 jury trial resulted in a mistrial because the jury could not reach a verdict. On April 15, 2010, following a second jury trial, the jury convicted Appellant of rape by forcible compulsion, involuntary deviate sexual intercourse ("IDSI") by forcible compulsion, sexual assault, indecent assault person less than 13 years of age, and corruption of minors.[1] On August 31, 2010, the trial court sentenced Appellant to concurrent terms of five to fifteen years' imprisonment on the rape and IDSI convictions. The trial court imposed no further penalty for the remaining convictions. Appellant filed a timely notice of appeal, and this Court affirmed on August 24, 2011.

On August 22, 2012, Appellant filed a counseled PCRA petition and, on September 24, 2012, he filed an amended PCRA petition and memorandum of law in support thereof. On October 4, 2013, the Commonwealth filed a motion to dismiss the PCRA petition. On January 30, 2014, the PCRA court issued a notice of intent to dismiss the PCRA petition without a hearing pursuant to Pennsylvania Rule of Criminal Procedure 907. On March 27,

_____

[1] 18 Pa.C.S. §§ 3121(a)(1), 3123(a)(1), 3124.1, 3126(a)(7), and 6301, respectively.

2014, the PCRA court dismissed the PCRA petition. On April 17, 2014, Appellant filed a timely notice of appeal. Both Appellant and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellant raises the following issues on appeal:

> I. Did the PCRA court err when the court dismissed Appellant's petition for post-conviction relief because trial counsel was ineffective when he failed to object to the prompt complaint jury instruction?
>
> II. Did the PCRA court err when the court dismissed Appellant's petition for post-conviction relief because trial counsel was ineffective when he failed to motion for a mistrial when the Commonwealth shifted the burden in its closing?

Appellant's Brief at 2 (capitalization omitted).

Our standard of review from the denial of post-conviction relief "is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." *Commonwealth v. Ousley*, 21 A.3d 1238, 1242 (Pa.Super.2011) (citing *Commonwealth v. Morales*, 701 A.2d 516, 520 (Pa.1997)).

For ineffective assistance of counsel claims, the petitioner must establish: "(1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." *Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa.2014) (quoting *Commonwealth v. Ali*, 10 A.3d 282, 291 (Pa.2010)). "[C]ounsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on appellant." *Ousley*, 21 A.3d at 1244 (quoting

*Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa.Super.2010)). "The failure to prove any one of the three [ineffectiveness] prongs results in the failure of petitioner's claim." *Id.* (quoting *Rivera*, 10 A.3d at 1279). "To demonstrate prejudice, the petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.'" *Spotz*, 84 A.3d at 312 (quoting *Commonwealth v. King*, 57 A.3d 607, 613 (Pa.2012)). "[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." *Id.* (quoting *Commonwealth v. Ali*, 10 A.3d 282, 291 (Pa.2014)).

Appellant first alleges his trial counsel was ineffective because he failed to object to the prompt complaint jury instruction. We disagree.

A "trial court has wide discretion in fashioning jury instructions." *Commonwealth v. Scott*, 73 A.3d 599, 602 (Pa.Super.2013) (quoting *Commonwealth v. Brown*, 911 A.2d 576, 583 (Pa.Super.2006)). We review a jury instruction to determine "whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case." *Id.* (quoting *Brown*, 911 A.2d at 582–83). We "view the charge as a whole, recognizing that the trial court is free to use its own form of expression in creating the charge." *Id.* (citing *Commonwealth v. Hamilton*, 766 A.2d 874, 878 (Pa.Super.2001)). The "key inquiry is whether the instruction on a particular issue adequately, accurately and clearly

presents the law to the jury, and is sufficient to guide the jury in its deliberations." *Id.* (quoting *Hamilton*, 766 A.2d at 878).

A sexual assault victim need not promptly report the crime. 18 Pa.C.S. § 3105. A defendant, however, may introduce evidence of the victim's failure to report the crime. *Id.* "The lack of a prompt complaint by a victim of a crime, although not dispositive of the merits of the case, may justifiably produce a doubt as to whether the offense indeed occurred, or whether it was a recent fabrication by the complaining witness." *Commonwealth v. Lane*, 555 A.2d 1246, 1250 (Pa.1989). "The theory is based on the principle that a victim of a violent assault would be expected to complain of the assault at the first safe opportunity." *Commonwealth v. Snoke*, 580 A.2d 295, 300 (Pa.1990) (citing *Lane*, 555 A.2d at 1246). Evidence of failure to make a prompt complaint should be considered when the victim is a child. *Lane*, 555 A.2d at 1251.

In *Snoke*, the child victim did not report that her father sexually assaulted her until 5 months later, after viewing a film at her elementary school dealing with sexual assault. 580 A.2d at 299. The Supreme Court of Pennsylvania found the trial court did not err when it denied a delay in complaint jury instruction, reasoning:

> Where no physical force is used to accomplish the reprehensible assault, a child victim would have no reason to promptly complain of the wrong-doing, particularly where the person involved is in a position of confidence. Where such an encounter is of a nature that a minor victim may not appreciate the offensive nature of the conduct,

the lack of a complaint would not necessarily justify an inference of a fabrication. As the testimony reveals in this case, the child had no reason to question the character of the conduct until her subsequent viewing of a film depicting this type of conduct. It is also significant that the party involved in the behavior was her father whom she would naturally trust and accept his judgment as to the propriety of the act. The encouragement by the father to maintain the confidence as to this incident also dilutes any inference drawn merely from a delayed complaint. In this setting the absence of an immediate outcry would not in and of itself warrant an inference that the event was a recent fabrication and, therefore, a charge to that effect was properly denied by the trial court.

*Id.* The Supreme Court further stated that it recognized:

[T]hat consideration should be given to factors inherent in cases involving minor victims which may explain the delay without reflecting unfavorably on the minor witness' credibility.

The untimely complaint might be made in order to protect the truly guilty party, as in the case of a child blaming an innocent party for the wrongdoing of a parent. It might be the act of revenge against the accused prompted by dislike or by an unrelated dispute between either the minor complainant and the accused or, possibly, between the family of the minor complainant and the accused. It is also possible that the immaturity of the victim would cause the child not to appreciate the offensiveness of the encounter and the need for its prompt disclosure.

*Id.* at 298 (quoting *Lane*, 555 A.2d at 1250) (emphasis deleted).

Here, the trial court provided the following instruction:

The evidence of [the alleged victim's] delay in making a complaint does not necessarily make her testimony unreliable, but it may remove from it the assurance of reliability accompanying the prompt complaint. Therefore, the delay in a complaint should be considered in evaluating her testimony and deciding whether the act occurred.

- 6 -

You must not consider the child's delay in making a complaint as conclusive evidence that the act did not occur. Her failure to complain promptly and nature of any explanation for that failure are factors bearing on the believability of her testimony and must be considered by you in light of all the evidence in the case.

And there were explanations given, explanations by her as to what she was thinking at age five when these things were happening, and then by other people in the family as to how much they knew and what they were willing to share with people; and you heard her story of how these things happened when she was five, and it wasn't until she was talking, she thought, in confidence to a counselor that she would end up telling anybody about these things.

The Supreme Court of Pennsylvania has said that prompt complaint, what I've just been describing to you, is really aimed at adults as victims, that an adult victim, that they're a victim of a sexual offense, you would expect they would promptly report that to somebody; because think what happened to them. They know what happened to them.

But a child may be different. A five-year-old might not react or understand what an adult understands. So what the Supreme Court of Pennsylvania says, where the victim does not comprehend the offensiveness of the contact at the time of the occurrence, the absence of an immediate complaint is understandable.

So you have to think back to what the victim's explanation was when she was five years old. What did she think was being done to her? What was her appreciation of this? Is it something you would expect a five-year-old to run off and report to the police? Because that's what prompt complaint means, or to some authority figure immediately?

Where no physical force is used to accomplish a sexual assault, a child victim, like a five-year-old, would have no reason to promptly complain of the wrongdoing, particularly where the person involved is in a position of confidence. Here, what [the alleged victim] was describing is a close family member, a person in a position of confidence.

N.T., 4/14/10, at 105-107.

Isolated portions of the jury instruction implied that, because the victim was a child, she was not expected to promptly report the abuse. As a whole, however, the instruction conveyed that the jury should consider the victim's delay in reporting the abuse, and any reasons for the delay, to determine the victim's credibility and whether the acts occurred. Read as a whole, this was an adequate, accurate, and clear description of the relevant law. *See Snoke*, 580 A.2d at 298-300. The court acted within its discretion in issuing the instruction.

Because the court acted within its discretion in issuing the instruction, the claim the instruction was error is meritless and the PCRA court properly dismissed the ineffective assistance of counsel claim based on the failure to object to the instruction. *See Scott*, 73 A.3d at 602; *Spotz*, 84 A.3d at 311.

Appellant next contends trial counsel was ineffective for failing to seek a mistrial in response to statements the prosecutor made during closing arguments. Because a motion for a mistrial would have been unsuccessful, this claim fails.

A "trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial." *Commonwealth v. Judy*, 978 A.2d 1015, 1019 (Pa.Super.2009) (quoting *Commonwealth v. Lettau,* 955 A.2d 360, 363 (Pa.Super.2008)). The "court must discern whether misconduct or

prejudicial error actually occurred, and if so, . . . assess the degree of any resulting prejudice." *Id.* We review an order denying a motion for mistrial for abuse of discretion. *Id.*

"In reviewing prosecutorial remarks to determine their prejudicial quality, comments cannot be viewed in isolation but, rather, must be considered in the context in which they were made." *Judy*, 978 A.2d at 1019 (quoting *Commonwealth v. Sampson*, 900 A.2d 887, 890 (Pa.Super.2006)). In reviewing prosecutorial remarks and an allegation of prosecutorial misconduct we must "evaluate whether a defendant received a fair trial, not a perfect trial." *Id.* (citing *Commonwealth v. Rios*, 721 A.2d 1049, 1054 (Pa.1998)).

A "prosecutor has considerable latitude during closing arguments and his arguments are fair if they are supported by the evidence or use inferences that can reasonably be derived from the evidence." *Judy*, 978 A.2d at 1020 (quoting *Commonwealth v. Holley*, 945 A.2d 241, 250 (Pa.Super.2008)). Comments made by a prosecutor must be examined within the context of defense counsel's conduct and a "prosecutor may fairly respond to points made in the defense closing." *Id.* (citing *Commonwealth v. Chmiel*, 889 A.2d 501, 544 (Pa.2005)). Moreover,

> prosecutorial misconduct does not take place unless the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict.

*Id.* (quoting *Holley*, 945 A.2d at 250).   Finally, "[p]rosecutorial misconduct is evaluated under a harmless error standard." *Id.*

At trial, Appellant argued the victim fabricated the assault during her 2008 hospitalization.  N.T., 4/14/2010, Vol. 1, 87-88.[2]  The victim testified that she thought her conversation with the hospital social worker was confidential.  N.T., 4/13/2010, Vol. 1, at 166-67, 217.  Appellant sought to introduce the statute outlining the mandatory reporting requirements applicable to various professionals to establish that when the social worker received the allegation, she had an obligation to report it, even though the victim thought the conversation was confidential.  N.T., 4/14/2010, Vol. 1, at 87-93.   The trial court precluded Appellant from introducing the mandatory reporting requirement statute.  *Id.* at 92-93.

During Appellant's closing argument, counsel stated:

> What didn't the Commonwealth do? I submit to you the last witness is the omission.  Where is the social worker? There's varying testimony regarding when [the victim] made these revelations.  When did she get released from the hospital?  Where is the social worker? It's not my job to produce the social worker.  It's not my job.  It's the Commonwealth's job.

N.T., 4/14/10, Vol. 2. at 35.

During its closing argument, the Commonwealth stated:

---

[2] The certified record contains two transcripts dated April 14, 2010, both labeled "Trial (Jury) Volume 1."   This Opinion refers to the transcript containing the testimony of witnesses as Vol. 1 and the transcript containing closing arguments and instructions as Vol. 2.

And defense counsel, at some point in his closing arguments, made reference to the fact that the counselor is not here. Under the law, there's a thing called the Health Information Protection Act. It's called [Health Insurance Portability and Accountability Act of 1996 ("HIPPA")]. And even though the woman is a mandatory discloser, even though she was supposed to report this doesn't mean everything [the victim] said is not confidential . . . Defense counsel would have you believe that, yes it's true, he doesn't have a burden to present any evidence at all. He doesn't have to call any witnesses. But he has her name and her phone number.

N.T., 4/14/10, Vol. 2 at 58-59. Defense counsel objected, arguing Appellant did not have the burden and it was not appropriate for the prosecutor to argue Appellant could have contacted a witness to testify. *Id.* at 59. The trial court ruled that it would instruct the jury to disregard the prosecutor's remarks about HIPPA and mandatory reporting, and the remarks about whether Appellant had access to the information. *Id.* at 59-60. The trial court gave the following curative instruction:

There are a couple things you should keep in mind.

Number one, the Commonwealth does not have the obligation to call every possible witness. For example, there were police officers involved in this case. You didn't hear them testify. That's not a deficiency in their case.

There may have been any number of people mentioned or implied during the course of the trial who were not called to testify. We can't hold it against the Commonwealth that they didn't call those witnesses.

Later on when I instruct you on reasonable doubt, I'll explain to you what reasonable doubt is; and there can be reasonable doubt based on a lack of evidence. But it's not reasonable doubt just because there was some witness, counselor, friends, police officer or detective, somebody who wasn't called.

- 11 -

The DA started talking to you about HIPAA and mandatory reporters, and I know some of you are probably familiar with some of those terms if you go to the doctor, you sign off on a HIPAA waiver or something; and I'm going to tell you to disregard all of that.

There was no testimony during the course of the trial involving HIPAA, involving the law of mandatory reporters, and there was nobody competent called to testify to any of that. That's not before you.

There are many statutes in Pennsylvania and there are many federal laws. If any of them is [sic] relevant, then it has to be introduced some way into the record and into the evidence, not brought up for the first time in closing argument, and I don't know, I sort of paid attention during the trial. I don't remember anybody saying HIPAA until five minutes ago or anything about mandatory reporters.

So the evidence is what it is, and you're to disregard that argument from the District Attorney.

*Id.* at 61-63. During its instructions prior to jury deliberation, the trial court

stated:

Furthermore, the Defendant is presumed innocent throughout the trial unless and until you conclude, based on careful and impartial consideration of the evidence, that the Commonwealth has proven him guilty beyond a reasonable doubt.

It is not the Defendant's burden to prove that he is not guilty. Instead, it is the Commonwealth that always has the burden of proving each and every element of the crime charged and that the defendant is guilty of the crime beyond a reasonable doubt. The person accused of a crime is not required to present evidence or prove anything in his own behalf.

If the Commonwealth's evidence fails to meet its burden, then your verdict must be not guilty. On the other hand, if the Commonwealth's evidence does prove beyond a reasonable doubt that the Defendant is guilty, then your verdict must be guilty.

N.T., 4/14/10, at 95-96.

Appellant's claim lacks merit. The prosecutor's closing argument did not shift the burden to the defense. It stated Appellant had no burden to present evidence. To the extent the suggestion that Appellant had the counselor's information and could have presented her testimony shifted the burden, this was cured by the court's instructions, including the instruction stating the defendant is presumed innocent, did not have to present evidence, and the Commonwealth had to prove guilt beyond a reasonable doubt. Moreover, the Commonwealth's statement was a fair response to Appellant's suggestion that the Commonwealth should have called the counselor as a witness. *Commonwealth v. Williams*, 863 A.2d 505, 518 (Pa.2004) (prosecutor's remark that defendant had opportunity to bring in and subpoena witnesses was fair response to defense counsel's remark regarding "tremendous resources" Commonwealth had to build case); *Commonwealth v. Keaton*, 45 A.3d 1050 (Pa.2012) (if challenged remark is in response to the defense's closing argument, "it will generally be deemed fair response and hence permissible comment"); *Commonwealth v. Hawkins*, 701 A.2d 492, 509-10 (Pa.1997) (prosecutor's closing remark that defendant did not prove someone other than appellant left saliva on the victim was fair response to defendant's argument someone other than appellant left saliva on victim).

Because the prosecutorial misconduct claim lacks merit, Appellant's ineffective assistance of counsel claim also lacks merit. *See Spotz*, 84 A.3d at 311.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/8/2015