J-S65007-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STANLEY J. CATERBONE | : | |
| | : | |
| Appellant | : | No. 1972 MDA 2018 |

Appeal from the Judgment of Sentence Entered November 5, 2018
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0006520-2017

BEFORE:   PANELLA, P.J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.:          **FILED FEBRUARY 21, 2020**

Appellant, Stanley Caterbone, appeals from his judgment of sentence for stalking, recklessly endangering another person ("REAP") and simple assault. We affirm.

Appellant lived next door to Brunilda Ramirez and her family in adjoining units in a duplex. Between September of 2016 and October of 2017, Ramirez reported several incidents involving Appellant to the police. In September and October of 2016, Ramirez called the police to report that Appellant was repeatedly banging loudly on their shared wall late at night. Ramirez again called the police in May of 2017, when Appellant approached her, cursed her out and threatened to burn their shared house. Then, in June of 2017, Appellant approached Ramirez's granddaughter at her school bus stop on two

_____

[*] Retired Senior Judge assigned to the Superior Court.

occasions. When Ramirez instructed Appellant not to speak to her granddaughter, Appellant again cursed her out. Ramirez reported these incidents to the police.

Ramirez reported another incident to the police in September of 2017 after Appellant again threatened to burn their shared building down during an argument. The following month, Ramirez's grandson, X.M., was walking down a narrow alleyway on his way to school when Appellant drove past X.M. at a fast speed and caused X.M. to jump back and fall to the ground. Appellant then followed X.M. in his vehicle until X.M. arrived at school. Once he got to school, X.M. saw Appellant drive past the school. X.M. reported this incident to his principal, who, in turn reported it to police.

During this time, Appellant was also posting information regarding Ramirez and her family on Twitter. These posts included multiple references to the Ramirez family and the address of their house, photographs of the house and surrounding area, and a video of Appellant following Ramirez's daughter, Ashley Ramirez, in their respective vehicles.

Based on these incidents, Appellant was charged with stalking, two counts of simple assault and REAP. At his jury trial, Appellant testified on his own behalf. He maintained that he was not stalking the Ramirez family but rather, the Ramirez family was stalking him. He also testified that he was afraid of the Ramirez's dog and that this fear was the reason behind some of his actions. The jury convicted Appellant of stalking, one count of simple

assault and REAP, and the trial court sentenced Appellant to an aggregate term of probation of ten years. This appeal followed.

Appellant first claims the evidence was insufficient to support his conviction for stalking because the Commonwealth did not prove Appellant had the requisite intent. This claim fails.

"Evidence presented at trial is sufficient when, viewed in the light most favorable to the Commonwealth as verdict winner, the evidence and all reasonable inferences derived therefrom are sufficient to establish all elements of the offense beyond a reasonable doubt." *Commonwealth v. Blakeney*, 946 A.2d 645, 651 (Pa. 2008) (citations omitted). The Commonwealth may sustain its burden entirely by circumstantial evidence and the jury, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part or none of the evidence. *See Commonwealth v. Ramtahal*, 33 A.3d 602, 607 (Pa. 2011). When determining whether a defendant had the requisite intent to commit a crime, the jury is also free to conclude that the defendant intended the natural and probable consequences of his actions. *See Commonwealth v. Holley*, 945 A.2d 241, 247 (Pa. Super. 2008).

To sustain a conviction for stalking, the Commonwealth must prove that the defendant:

> engage[d] in a course of conduct or repeatedly commit[ted] acts toward another person, including following the person without proper authority, under circumstances which demonstrate either an intent to place such other person in reasonable fear of bodily

injury or to cause substantial emotional distress to such other person.

18 Pa.C.S.A. § 2709.1(a)(1). The statute defines "course of conduct" as "a pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct," and defines "emotional distress" as "a temporary or permanent state of mental anguish." 18 Pa.C.S.A. § 2709.1(f).

In rejecting Appellant's assertion that the Commonwealth failed to prove the element of intent, the trial court stated:

> Appellant's argument is clearly refuted by the facts in this case set forth above. Specifically, Appellant's conduct – including threatening to burn the house he shared with the victims, following the victims in his vehicle, and knocking hard on the shared wall so loudly it awoke the victims and caused objects to fall off the victims' wall – could only be intended to cause Ms. Ramirez and her family substantial emotional distress.

Trial Court Opinion, 3/25/19, at 5.

Appellant argues, however, that the Commonwealth did not – and essentially could not - prove that he intended to cause the Ramirez family substantial emotional distress because he believed that the Ramirez family was actually stalking him. According to Appellant, his actions were not motivated by any intent to cause distress but were motivated by his perceived fear of the Ramirez family and their dog, even if "some of [his] beliefs were not reality-based." Appellant's Brief at 33. This claim fails for several reasons.

First, to the extent that Appellant is suggesting that his mental state may have prevented him from forming an intent to commit the crime of stalking, we note that Appellant did not offer any mental infirmity defense or expert medical testimony to that effect at trial. Moreover, Appellant testified at trial and told the jury that he believed the Ramirez family was stalking him, that he needed to protect himself from them and their dog, and that he did not intend to stalk or harm the family.

The jury obviously did not believe Appellant's testimony that he only intended to protect himself. Instead, the jury, as it was free to do, clearly concluded that Appellant intended the natural and probable consequences of his actions. Those actions, which included threatening to burn the house he shared with the Ramirez family and speeding towards a child from that family in a narrow alleyway, would naturally, and in fact did, cause substantial emotional distress.[1] We agree with the trial court that there was more than sufficient evidence to support Appellant's conviction for stalking.

Appellant also argues that the evidence was insufficient to support his conviction for the simple assault of X.M. pursuant to 18 Pa.C.S.A. § 2701(a)(3), which provides that a person is guilty of that offense if he

---

[1] Brunilda Ramirez testified that Appellant had scared her and had scared her granddaughter. **See** N.T. Trial, 8/20/18, at 144-45. She testified that the multiple incidents with Appellant that had been going on "for over two years" were very upsetting to her, especially because they involved her grandchildren. **Id**. at 148-50. X.M. also testified that Appellant had scared him. **See id**. at 108.

"attempts by physical menace to put another in fear of imminent serious bodily injury." This claim also fails.

X.M. testified at Appellant's trial. He testified that he is eleven years-old, that Ramirez is his grandmother, and that Appellant is his neighbor. He further testified that on the morning of October 31, 2017, as he was walking to school in the narrow alleyway behind his house, he heard the engine of Appellant's vehicle. Appellant then sped towards him. X.M. testified that he jumped back to get out of the vehicle's way and fell to the ground after being hit on the elbow by the side mirror of the vehicle. X.M. also testified that a few days before this incident, Appellant had threatened to burn their shared house and to kill him.

Appellant acknowledges that he recklessly endangered X.M. and could have placed him in fear of imminent serious bodily injury by speedily driving past him in a narrow alleyway. However, echoing the argument made in his first claim, Appellant asserts that he never intended to place X.M. in any such fear but rather "believed X.M. was stalking him" and that is why he "rushed through the alleyway." Appellant's Brief at 37. Indeed, Appellant testified at trial that X.M. was stalking him, that he followed X.M. only to "establish whether he really was going to [the local elementary school]" and that he did not intend to cause him harm. N.T. Trial, 8/21/18, at 246.

However, as the trial court noted in rejecting this claim below, the jury was free to discredit Appellant's testimony about his stated intent of his

actions. The jury was also free to believe X.M.'s testimony, which was more than sufficient to support Appellant's conviction for simple assault.

Next, Appellant claims the trial court erred by precluding him from presenting evidence that the Ramirez's dog attacked and bit him. This claim warrants no relief.

A trial court's decision regarding the admissibility of evidence will only be reversed on appeal if the trial court abused its discretion. *See* *Commonwealth v. Yockey*, 158 A.3d 1246, 1254 (Pa. Super. 2017). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality." *Id*. (citation omitted). Evidence will only be admitted at trial if it is relevant, *see* Pa.R.E. 402, meaning that it "logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact." *Commonwealth v. Reid*, 811 A.2d 530, 550 (Pa. 2002) (citation omitted).

Prior to trial, Appellant sought to offer evidence that the Ramirez's dog had previously attacked and bitten him. The proffered evidence included an email about the dog bite and hospital discharge papers. The trial court ruled that evidence of the dog bite was not admissible. *See* N.T. Trial, 8/20/18, at 15. However, the trial court explicitly told Appellant that he could testify that he was afraid of the Ramirez's dog. *See id*.

- 7 -

In rejecting Appellant's claim that this ruling was in error, the trial court explained that evidence of the dog bite was simply not relevant to Appellant's case.[2] Appellant counters that the evidence of the dog bite was relevant because it explained why he acted the way he did. However, Appellant was allowed to testify that he was afraid of the dog. In fact, Appellant did testify to that effect, telling the jury that his neighbors have a large pit bull and stating several times that he was frightened of the dog and that is why he acted in the manner that he did. **See, e.g**., N.T. Trial, 8/21/18, at 240, 248, 253.

The jury obviously chose not to believe Appellant that his course of conduct could somehow be explained by his fear of the Ramirez's dog. We find no abuse of discretion in the trial court's decision to exclude evidence relating to the dog bite itself. Even if the trial court did err, we would find the error to be harmless. **See Commonwealth v. Hairston**, 84 A.3d 657, 671 (Pa. 2014) (stating that an error is harmless if the error did not prejudice the defendant or the prejudice was *de minimus*). The evidence of the dog bite would merely have been cumulative to Appellant's testimony about his fear of the dog. Appellant has not established that it would have convinced the jury that his actions were justified by his fear of the dog.

---

[2] The court also found that Appellant's email regarding the dog bite constituted inadmissible hearsay. While Appellant disagrees, he fails to identify which of the exceptions to the hearsay rule he believes would apply to the email, or to any of his proffered documents. **See Commonwealth v. Manivannan**, 186 A.3d 472, 482 (Pa. Super. 2018) (stating that hearsay is not admissible unless it falls within one of the exceptions to the hearsay rule).

Appellant also claims the trial court erred by precluding him from explaining the mumbling that was on the video that showed him following Ashley Ramirez in their respective vehicles. This claim also provides no basis for relief.

At trial, the Commonwealth played a video Appellant had recorded of himself while he was following Ashley in her vehicle. Appellant then posted the video on Twitter. During that video, Appellant is heard mumbling to himself, including making a statement that he was following Ashley.

Prior to Appellant's testimony, trial counsel requested a ruling by the court to allow him to ask Appellant to explain this mumbling because, according to counsel, it was "kind of disturbing behavior." N.T. Trial, 8/21/18, at 231. When asked by the court what that explanation would be, Appellant told the court that what he had mumbled on the video was a result of "synthetic telepathy" and that, as a victim of U.S. sponsored mind control, he was actually mouthing the words being telepathically communicated to him by someone else. *See id*. at 232, 234. The trial court denied counsel's request, ruling that Appellant could not testify about a condition "without some medical testimony or some expert testimony here to support this condition and that you have it." *Id*. at 234-35.

Appellant now claims the trial court "missed the point" and that Appellant's belief that he had synthetic telepathy should have been admissible to show his state of mind and that he did not intend to follow Ashley. Appellant's Brief at 46. In rejecting this argument below, the trial court made

clear that Appellant's explanation for the mumbling on the video was not relevant to the case. As the trial court stated in its opinion, "whether Appellant suffered from 'synthetic telepathy' did not make any fact of consequence in the action more or less probable, including whether Appellant intended to cause Ms. Ramirez and her family substantial emotional distress." Trial Court Opinion, 3/25/19, at 7-8.  We see no abuse of discretion in this determination.

Moreover, we would find any error on the part of the trial court to be harmless. The evidence that Appellant stalked the Ramirez family was overwhelming. Appellant's following of Ashley was but one of the many actions presented by the Commonwealth that showed Appellant engaging in a course of conduct demonstrating an intent to cause substantial emotional distress to the Ramirez family. In light of this overwhelming evidence of Appellant's guilt, any error on the part of the trial court that occurred from precluding Appellant from testifying about his self-diagnosed synthetic telepathy would have been, at most, harmless. **See Commonwealth v. Spotz**, 896 A.2d 1191, 1222 (Pa. 2006) (stating that an error is harmless if the evidence of guilt, without regard to the tainted evidence, is so overwhelming that the conviction would have followed beyond a reasonable doubt without regard to it).

Next, Appellant claims the trial court erred by instructing the jury that "there are no defenses with regard to any mental infirmity or mental health issues that are being presented in this case, so that's not something for you to be concerned about any further." N.T. Trial, 8/21/18, at 311. Again, this claim does not offer Appellant any basis for relief.

- 10 -

The trial court has broad discretion in fashioning jury instructions. *See Commonwealth v. Thomas*, 904 A.2d 964, 970 (Pa. Super. 2006). When reviewing a challenge to those instructions, the reviewing court must consider the charge as a whole and determine whether the charge was inadequate, erroneous or prejudicial. *See Commonwealth v. Fletcher*, 986 A.2d 759, 792 (Pa. 2009). "A new trial is required on account of an erroneous jury instruction only if the instruction under review contained fundamental error, misled, or confused the jury." *Id*. (citation omitted).

We see no error in the instruction Appellant challenges here. There is no dispute that Appellant did not present a defense of insanity or mental infirmity at trial. However, because there was concern that the jury may have been confused by Appellant's testimony, which Appellant admits in his brief showed "disordered thinking," the trial court merely clarified in its instructions to the jury that Appellant had not introduced any defense pertaining to his mental health and therefore the jury should not consider any such defense. *See* Appellant's Brief at 52.

Appellant now complains that the practical effect of the court's instruction was to tell the jury to disregard his testimony and that they could not "consider [Appellant's] beliefs that he was being stalked and that he was in danger." *Id*. at 52, 54. This assertion is belied by the record.

The trial court did not tell the jury to disregard Appellant's testimony or any other evidence regarding Appellant's beliefs. In fact, the court specifically instructed the jury that when considering Appellant's testimony, they were to

follow the general instructions given for judging the credibility of any witness. *See* N.T. Trial, 8/21/18, at 311. To avoid any confusion that Appellant's testimony may have caused, however, the court instructed the jury that Appellant had not put forth any defense related to his mental state, which is undisputedly supported by the record. *See* N.T. Trial, 8/20/19, at 212 (Appellant's trial counsel stating that he was not offering any kind of mental infirmity defense). No relief is due.[3]

In his last claim, Appellant alleges the prosecutor committed misconduct during his closing argument and the trial court erred by denying counsel's request for a curative instruction in response to that misconduct. These claims both fail.

> Comments by a prosecutor constitute reversible error only where their unavoidable effect is to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict. The prosecution's statements are unobjectionable if they are based on the evidence or proper inferences therefrom, or represent mere oratorical flair.

---

[3] Pa.R.Crim.P. 568 ("Rule 568") requires a defendant to file a notice of intent if he is going to offer a defense of insanity or mental infirmity or if he is going to offer expert evidence of a mental condition. Appellant argues that the court, through its instruction, improperly prohibited the jury from considering all evidence related to his mental health merely because he did not file notices of intent pursuant to Rule 568. As discussed above, the court's instruction did no such thing. The instruction was limited to making sure the jury understood that it was not to consider a defense based on Appellant's mental health because this defense was never offered by Appellant. Appellant makes no argument that this instruction was not accurate because he actually did file a Rule 568 notice of, or present, such a defense.

Additionally, the prosecution must be permitted to respond to arguments made by the defense.

*Commonwealth v. Tedford*, 960 A.2d 1, 33 (Pa. 2008) (citations omitted).

Appellant objects to the following comments made by the prosecutor during his closing argument:

> Well, where are the documents of the Pit Bull that he is so terrified of? Where's the photographs of that? Where's the documents, where's the photographs of Brunilda and Ashley and people waiting outside and throwing plywood pieces at him that he talked about? Where are those documents? Why didn't he photograph that stuff? Because it didn't happen.

N.T. Trial, 8/21/18, at 289. Appellant claims these comments amounted to prosecutorial misconduct because the prosecutor questioned why there had been no documentation of the dog when the prosecutor knew Appellant had been precluded from presenting evidence that the dog had bitten him.

In making his claim, Appellant fails to quote the comments by the prosecutor which immediately preceded the comments quoted by Appellant above. The prosecutor stated:

> [D]efense counsel mentioned how – how the defendant documented everything. And the defendant told you how he had to document everything. He had to take these pictures and put them on Twitter … because he had to document everything.

*Id*. The prosecutor then asked where the photographs of the dog were.

When placed in context, it is clear the challenged comments do not constitute reversible error. After trial counsel raised his objection to these

- 13 -

comments,[4] the prosecutor explained at sidebar that the comments did not refer to anything about a dog bite or to any of the evidence Appellant was not allowed to introduce about that dog bite. *See id*. at 304-05. Rather, the prosecutor noted that Appellant had been permitted to - and did - testify about the existence of the dog and therefore could have offered photographs of the dog. *Id.*

The prosecutor also noted that Appellant had repeatedly testified at trial that he needed to document as much as he could to create a record of what was happening to him. *Id.* Based on this testimony by Appellant, the prosecutor argued that it was reasonable for him to question why Appellant had not produced photographs of the dog. *Id*. We agree with the trial court that the prosecutor's comments constituted a fair response to Appellant's testimony and were therefore not improper. *See Tedford*, 960 A2d at 34 (finding that the prosecutor's comments responding to the appellant's testimony were not improper).

Appellant asserts, however, that the trial court should have at least given a curative instruction telling the jury that the dog did exist and allowing them to see his documents related to the dog bite. According to Appellant, this was necessary to counteract any doubts about the dog's existence that

_____

[4] The trial court found that Appellant had waived this issue because counsel did not object when the challenged comments were made but instead waited to raise the issue until after the closing arguments were finished and the trial court had begun its instructions. However, as the trial court found, even if the issue is not waived, it is without merit.

the prosecutor created by commenting on Appellant's failure to produce photographs of the dog.

As discussed above, the prosecutor's comments regarding the photographs of the dog were not improper and therefore, no curative instruction was warranted. Moreover, the trial court instructed the jury that Appellant had no burden to present any evidence in his defense, *see* N.T. Trial, 8/21/18, at 320, and that the speeches of counsel were not evidence, *see id*. at 306. We agree with the trial court that Appellant has not shown that he was prejudiced by the trial court's decision not to give the charge Appellant requested about the dog. *See Commonwealth v. Scott*, 73 A.3d 599, 602 (Pa. Super. 2013) (stating that the court's refusal to give a requested charge only requires reversal if the defendant was prejudiced by that refusal).

Judgment of Sentence Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/21/2020