J-S13037-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| RAYMOND GARLAND | |
| Appellant | No. 2153 EDA 2016 |

Appeal from the Judgment of Sentence June 16, 2016
in the Court of Common Pleas of Philadelphia County Criminal Division
at No(s): CP-51-CR-0000749-2015

BEFORE: BENDER, LAZARUS, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED MARCH 13, 2017**

Appellant, Raymond Garland, appeals from an aggregate judgment of sentence of twenty-one to forty-two years' imprisonment for third degree murder[1] and carrying firearms without a license.[2]  Appellant was also convicted of possession of an instrument of crime[3] and persons not to possess, use, manufacture, control, sell or transfer firearms,[4] but the trial court did not impose any penalty for these offenses.  Appellant challenges the sufficiency of the evidence and asserts multiple objections to the trial proceedings.  We affirm Appellant's conviction for third degree murder,

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502(c).

[2] 18 Pa.C.S. § 6106(a)(1).

[3] 18 Pa.C.S. § 907(a).

[4] 18 Pa.C.S. § 6105.

possession of an instrument of crime and carrying firearms without a license. We reverse Appellant's conviction under 18 Pa.C.S. § 6105, but because reversal of this conviction will not upset the overall sentencing scheme, we decline to remand for resentencing.

The trial court summarized the factual history of this case as follows:

> On October 20, 2014, at around 1 a.m., Khary Ford (known as "Deals"), Steven Robinson ("Shooter"), and [Appellant] ("Ghost") were selling drugs in the area of Jasper and Thayer Streets in Philadelphia. . . . At around this time, [Appellant] approached Ford and Robinson, who were in the same drug organization, and claimed that "four n*ggaz" just robbed him of his cell phone and $700. [Appellant] told Ford to grab his pistol. Ford, Robinson, and [Appellant] then searched the area for the alleged robbers.
>
> On the night of the shooting, [Appellant] was the drug organization's caseworker. The caseworker holds the majority of the money and passes out the bulk of the drugs to the distributors. After searching for a short time with [Appellant], Ford suspected that [Appellant] had faked the robbery and had stolen the drug money.
>
> After they failed to locate anyone, Robinson and [Appellant] left Ford and walked to a Chinese restaurant at around 2:20 a.m. Around the same time, the decedent, Kevin Parker[,] who was not involved in any drug organization[,] left his home on the 1800 block of East Ontario for a 7-Eleven located on the same block to buy cigarettes. On the way to the Chinese restaurant, [Appellant], walking on the same block, spotted Parker, from around 130 feet away. After spotting Parker, [Appellant] said to Robinson, "I think that's the little motherf**ker right there." [Appellant] pulled out a black semiautomatic firearm[5] and attempted to fire at Parker,

---

[5] Robinson testified that he did not know that Appellant was carrying a firearm until he "pulled it out." N.T., 3/29/16, at 175.

- 2 -

but the safety was on. After removing the safety, he fired, killing Parker and hitting a windowsill of a house.

Dr. Bruce Wainer, an associate medical examiner and neuropathologist with the Philadelphia Medical Examiner's Office, determined that Parker's cause of death was a penetrating gunshot wound to the back. The bullet entered Parker's right, upper back and into the right chest cavity. The bullet passed through the lower left lobe of Parker's right lung and into the central portion of his chest cavity, perforating the lower airway and aorta, and stopping behind his left collarbone. The manner of death was homicide.

The Crime Scene Unit recovered projectile fragments on the ground in front of 1822 East Ontario Street. The frames for the window and the front door at 1822 East had bullet holes. There was also a bullet hole in the window frame of 1818 East Ontario. The Crime Scene Unit recovered five Remington 9mm Luger fired cartridge casings ("FCCs") within a few feet of each other, diagonally across the street in front of 1839 East Ontario. All five FCCs were fired from the same firearm. The distance from the sidewalk in front of 1822 to the sidewalk in front of 1839 was roughly 130 feet.

After shooting Parker, [Appellant] and Robinson ran, eventually finding Ford. [Appellant] told Ford that he had "dropped him," referring to the person he had just shot. Moments later, [Appellant] handed Ford a Luger firearm rolled inside a t-shirt and asked Ford to hide it inside his house. Later, Nate, a member of the same drug organization, retrieved the firearm from Ford's house. On November 20, 2014, Ford, in an interview with Philadelphia Police detectives, identified [Appellant], who[m] he knew as "Ghost," as the person who gave him the firearm the night of the shooting. Ford also selected [Appellant]'s photograph from an eight-person photograph array[] and identified himself in a still photograph taken from a 7-Eleven surveillance camera from the night of the shooting.

On November 19, 2014, Robinson, in an interview with detectives,[6] identified [Appellant] as the shooter from a photograph array. He also identified himself, Ford, and [Appellant] in a still photograph taken from the 7-Eleven footage the night of the shooting. On December 8, 2014, Robinson told detectives that he saw [Appellant] while in custody at Curran-Fromhold Correctional Facility ("CFCF"). There, [Appellant] told Robinson that "they got [me] for that shooting," referring to the shooting on Ontario Street.

Trial Ct. Op., 9/8/16, at 2-4 (record citations omitted). The evidence further established that Appellant did not have a license to carry firearms. N.T., 3/30/16, at 91-92.

On March 31, 2016, at the conclusion of a four-day trial, the jury found Appellant guilty of the aforementioned offenses. On June 16, 2016, the court imposed sentence. On July 10, 2016, Appellant filed a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues in this appeal:

I. Is Appellant entitled to an arrest of judgment with regard to his convictions for third degree murder, violation of the Uniform Firearms Act (two counts) and possessing instruments of crime[,] since the evidence is insufficient to sustain the verdicts of guilt as the Commonwealth failed to sustain its burden of proving Appellant's guilt beyond a reasonable doubt?

II. Is Appellant entitled to a new trial as a result of the trial court's failure to grant his challenge for cause to prospective Juror No. seventeen?

---

[6] During trial, Robinson recanted his statements to the detectives. N.T., 3/29/16, at 160-61 (Robinson's testimony that police officers bribed and threatened him on three occasions when he gave statements).

III. Is Appellant entitled to a new trial as a result of the trial court's ruling that denied his **Batson**[7] challenge?

IV. Is Appellant entitled to a new trial as a result of the trial court's ruling that denied his motion for a mistrial made after the prosecutor made inflammatory remarks during his opening statement to the jury?

V. Is Appellant entitled to a new trial as a result of the trial court's ruling that allowed the Commonwealth to present the testimony of prosecutors Emily Rodriguez and Edward Cameron with regard to any deals or agreements with Commonwealth witnesses in exchange for their testimony?

VI. Is Appellant entitled to a new trial as a result of the trial court's ruling that allowed the Commonwealth to read the portion of Khary Ford's statement to the jury with regard to his position during the incident and his identification of the individuals involved?

VII. Is Appellant entitled to a new trial as a result of the trial court's ruling that denied his request for a specific jury instruction as to bias of Commonwealth witnesses?

Appellant's Brief at 5-6.

Appellant first argues that the evidence was insufficient to sustain his conviction for third degree murder due to the failure to prove that he committed the shooting, the failure to prove the element of malice, the absence of physical evidence and the alleged inconsistencies in the Commonwealth's evidence. We disagree.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial the in the light most favorable to the verdict

---

[7] **Batson v. Kentucky**, 476 U.S. 79 (1986).

winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact [,] while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

*Commonwealth v. Talbert*, 129 A.3d 536, 542-43 (Pa. Super. 2015) (citation omitted), *appeal denied*, 138 A.3d 4 (Pa. 2016).

"Third degree murder occurs when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice." *Commonwealth v. Truong*, 36 A.3d 592, 597 (Pa. Super. 2012) (*en banc*) (citation and quotation marks omitted). "Malice is not merely ill-will but, rather, wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty." *Id.* at 597-98 (citation and quotation marks omitted). "Malice may be inferred from the use of a deadly weapon on a vital part of the victim's body . . . [or] after considering the totality of the circumstances." *Id.* at 598 (citation omitted).

The evidence was sufficient to establish Appellant's identity as the killer. Appellant shot the victim to death on a public street, and Appellant's cohort, Robinson, gave statements in which he identified Appellant as the shooter and pointed him out in a still photograph recovered from video surveillance tapes. *See Commonwealth v. Patterson*, 940 A.2d 493, 502 (Pa. Super. 2007) (("positive identification by one witness is sufficient for conviction") (citation omitted)). The fact that Robinson recanted these statements during trial is of no moment. Prior inconsistent statements, such as Robinson's statements to police, are admissible as substantive evidence when

> the witness who gave the prior inconsistent statement testif[ies] at trial and [is] subject to cross-examination regarding the statement, and, also, [his] previous inconsistent statement [is] "given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (b) is a writing signed and adopted by the declarant, or (c) is a verbatim contemporaneous recording of an oral statement."

*Commonwealth v. Brown*, 52 A.3d 1139, 1171 n. 52 (Pa. 2012) (citing Pa.R.E. 803.1(1)). Prior inconsistent statements that satisfy these requisites "must . . . be considered by a reviewing court in the same manner as any other type of validly admitted evidence when determining if sufficient evidence exists to sustain a criminal conviction." *Id.* at 1171. Here, Robinson testified at trial, was subject to cross-examination concerning his statements to police, and his prior statements were writings that he signed

and adopted. Accordingly, we must review them in the same manner as any other valid evidence for sufficiency purposes.

In addition to Robinson's statements, the Commonwealth furnished other substantial evidence that Appellant committed the shooting. Minutes after the shooting, Ford saw Appellant fleeing the scene. Appellant told Ford that he had just "dropped" someone and asked Ford to a hide a nine-millimeter firearm, the same caliber gun used to shoot the victim. Police officers later recovered one nine-millimeter round from Appellant's house. It is reasonable to infer from all of this evidence that defendant was the shooter. **See Commonwealth v. Montalvo**, 956 A.2d 926, 933 (Pa. 2008) (defendant's admission of murdering victim was substantive evidence of guilt); **Commonwealth v. Wallace**, 561 A.2d 719, 722-23 (Pa. 1989) (evidence that defendant was seen near scene of shooting, possessed gun similar to one used to commit crime, and later admitted his involvement was sufficient to convict him of murder); **Truong**, 36 A.3d at 600 (attempt to dispose of murder weapon is evidence of consciousness of guilt).

The evidence also was sufficient to establish malice. To begin with, Appellant shot the victim in the back. **See Commonwealth v. Lohr**, 468 A.2d 1375, 1377 (Pa. 1983) (back is vital part of body); **Commonwealth v. Martinez**, 446 A.2d 899, 901 (Pa. 1982) (citation omitted) (use of deadly weapon on vital part of victim's body establishes malice). The callous manner of the shooting demonstrates malice as well. Appellant claimed to

be hunting down the man who robbed him, although it was possible that that Appellant faked the robbery himself. Upon glimpsing the victim more than 100 feet away, Appellant suddenly exclaimed "that's the little motherfucker right there," pulled out a gun, and fired at least five shots. N.T., 3/29/16, at 173. Afterward, he boasted that he "dropped" the victim. *Id.* at 239. His lack of regard for human life and the flimsiness of his pretext for shooting the victim evidences his "wickedness of disposition [and] hardness of heart." *Truong*, 36 A.3d at 597-98; *see also Commonwealth v. Marquez*, 980 A.2d 145, 149 (Pa. Super. 2009) (*en banc*) (fact that defendant sought out victim before murder supported conclusion that he acted with malice).

Appellant further claims the evidence was insufficient because "the Commonwealth did not present any physical or scientific evidence" connecting him to the shooting. Appellant's Brief at 21. We disagree. It is the "totality of the circumstances [that is] determinative, not the presence or absence of any particular piece of evidence[.]" *Commonwealth v. Harper*, 611 A.2d 1211, 1217 (Pa. Super. 1992) (citation omitted). The totality of evidence summarized above clearly supports the verdict of guilt.

Appellant also contends that the evidence was insufficient under "incontrovertible physical facts rule," which provides that a witness's testimony cannot be accepted, and a verdict based on this testimony cannot stand, when the testimony "is contradicted by incontrovertible physical

facts." ***Commonwealth v. Newman***, 470 A.2d 976, 979 (Pa. Super. 1984) (citations omitted). This rule is inapplicable here, for as the Commonwealth correctly observes, Appellant "does not point to any incontrovertible facts that are in any way contrary to the Commonwealth's evidence." Commonwealth's Brief at 13.

Appellant asserts that the testimony was "inconsistent" and "biased," but he does not point out which testimony is inconsistent. Assuming inconsistencies exist, "[this] is not, absent more, enough to destroy the Commonwealth's case, as it is the fact finder's function to resolve inconsistencies by believing all, part or none of a particular witness' testimony." ***Commonwealth v. Mercado***, 649 A.2d 946, 957 (Pa. Super. 1994) (citations omitted). The jury chose to resolve any inconsistencies against Appellant, as it was entitled to do.

Appellant also contends that the evidence was insufficient to sustain his conviction for possession of an instrument of crime. The Crimes Code provides: "A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S. § 907(a). The same statute defines "instrument of crime" as, *inter alia*, "[a]nything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." 18 Pa.C.S. § 907(d). The evidence summarized above demonstrates that Appellant used a gun for criminal purposes and possessed it under

circumstances not manifestly appropriate for lawful uses that it may have. Accordingly, Appellant's challenge to the sufficiency of the evidence for this offense fails.

Further, Appellant argues that the evidence was insufficient to sustain his conviction for carrying firearms without a license. We disagree. The Crimes Code provides, with exceptions not relevant here, that "any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree." 18 Pa.C.S. § 6106(a)(1). Viewed in the light most favorable to the Commonwealth, the evidence demonstrates that Appellant was carrying a firearm concealed on his person, because Robinson did not know that Appellant was carrying a gun until he "pulled it out" and began firing at the victim. N.T., 3/29/16, at 175. The evidence also established that Appellant did not have a valid and lawfully issued license to carry a firearm. Thus, Appellant's challenge to the sufficiency of the evidence for this offense fails.

Finally, Appellant contends that the evidence was insufficient to sustain his conviction under 18 Pa.C.S. § 6105, entitled "Persons not to possess, use, manufacture, control, sell or transfer firearms." Section 6105 prohibits persons from possessing firearms if they have been "convicted" of certain enumerated crimes, including robbery. 18 Pa.C.S. § 6105(a)(1), (b).

- 11 -

Our Supreme Court recently held that juvenile adjudications of delinquency do not qualify as "convictions" under section 6105. *See Commonwealth v. Hale*, 128 A.3d 781, 785 (Pa. 2015). The evidence demonstrates that in 2013, Appellant was adjudicated delinquent for robbery. N.T., 3/31/16, at 13. Under *Hale*, this adjudication does not establish Appellant's guilt under section 6105. Accordingly, we reverse Appellant's judgment of sentence for this conviction.

In his second argument, Appellant contends that the trial court abused its discretion in denying his challenge for cause to strike Juror No. 17, whose son had been arrested two years prior for drug dealing and forgery, because the juror "express[ed] doubts with regard to his ability to be fair." Appellant's Brief at 29. We hold that the trial court should have stricken Juror No. 17, but its failure to do so was harmless error.

During jury selection, Juror No. 17 stated that his son was addicted to drugs and had been arrested for dealing drugs and forgery. When the trial court informed the juror that this case involved evidence related to drug trafficking, the following colloquy took place:

> COURT: . . . [T]here may be evidence in this case that one or more individuals were involved in the distribution of narcotics. If you heard that evidence, given what has been going on with your son, would that interfere with your ability to be fair in this case?
>
> [JUROR NO. 17]: I would try not to let it be, I guess.
>
> COURT: It may be a hard situation. You tell me. Would you prefer to go to another room and hear possibly

another case, or do you think you can put [your son's history] aside and judge this case only on its merits? Forget about going to the other room. The real question is could you put aside what your personal experience—you don't put it aside. You have to be able to be fair and judge this case on its merits.

[JUROR NO. 17]: Consciously I would imagine I could.

COURT: I'm asking because it sounds like this is a fairly new situation with your son.

[JUROR NO. 17]: We are still struggling with it.

COURT: Is there anything else about you that—anything else about your life we didn't cover that would interfere with your ability to be fair?

[JUROR NO. 17]: Not that I can think of.

COURT: Bottom line we are looking for jurors who could be fair to both the defendant and Commonwealth. Are you one of those people?

[JUROR NO. 17]: I think so.

N.T., 3/28/16, at 81-82. Appellant used a peremptory strike to dismiss Juror No. 17. *Id.* at 83. By the conclusion of jury selection, Appellant used only five of his seven peremptory challenges.

A challenge for cause for a prospective juror is sustained only where that juror "demonstrates through his conduct and answers a likelihood of prejudice." *Commonwealth v. Penn*, 132 A.3d 498, 502 (Pa. Super. 2016) (citation omitted).

> Where a prospective juror indicates that he or she cannot be an impartial juror, much depends upon the answers and demeanor of the potential juror as observed by the trial judge.

Individuals are not expected to be free from all prejudices in order to sit on a jury and the burden here is on appellant to establish that the challenged jurors possessed a fixed, unalterable opinion that prevented [them] from rendering a verdict based solely on the evidence and the law.

***Commonwealth v. Impellizzeri***, 661 A.2d 422, 427 (Pa. Super. 1995), (citations and quotation marks omitted). "[T]he test of disqualification is the juror's ability and willingness to eliminate the influence of his scruples and render a verdict according to the evidence." ***Penn***, 132 A.3d at 502 (citation omitted). "The decision whether to disqualify a venireman is within the discretion of the trial court and will not be disturbed on appeal absent a palpable abuse of that discretion." ***Id.*** (citation omitted).

The trial court abused its discretion in denying Appellant's motion to strike Juror No. 17 for cause. The record indicates that the juror was uncertain whether he could put aside his son's drug history and judge the case fairly on its merits, because he "was still struggling with [his son's drug issues]." N.T., 3/28/16, at 82. The trial court should not have been confident under these circumstances that this juror exhibited "[the] ability and willingness to eliminate the influence of his scruples and render a verdict according to the evidence." ***Penn***, 132 A.3d at 502.

Nevertheless, our review of the record reveals that the error was harmless. Our Supreme Court has noted that

[t]he doctrine of harmless error is a technique of appellate review designed to advance judicial economy by obviating

- 14 -

the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt. Its purpose is premised on the well-settled proposition that a defendant is entitled to a fair trial but not a perfect one.

*Commonwealth v. Thornton*, 431 A.2d 248, 251 (Pa. 1981) (quotation and citations omitted).

Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Melvin*, 103 A.3d 1, 20 (Pa. Super. 2014) (quotation and citations omitted).

In this case, the trial court's decision not to strike Juror No. 17 did not prejudice Appellant, because Appellant peremptorily struck this individual without exhausting his peremptory challenges. *See Commonwealth v. Kelly*, 134 A.3d 59, 62 (Pa. Super. 2016), *appeal denied*, ___ A.3d ___, 2016 WL 5400621 (Pa. Sep. 27, 2016) ("[t]he improper refusal of a challenge for cause is harmless error where the juror is excluded by a peremptory challenge and the defendant does not exhaust his peremptory challenges").

In his third argument, Appellant contends that the Commonwealth violated *Batson* by using four peremptory challenges to strike four prospective African-American or Hispanic jurors on the basis of race: Juror

Nos. 9, 25, 28 and 30. The trial court held that Appellant provided *prima facie* evidence that the Commonwealth struck jurors on the basis of race,[8] but it determined that the Commonwealth submitted non-pretextual, race-neutral reasons for each strike. Trial Ct. Op. at 6-7. We conclude that the trial court acted within its discretion.

**Batson** provides a three-step process. First, to demonstrate a **Batson** violation, the defendant must make a *prima facie* showing that the Commonwealth has exercised peremptory challenges on the basis of race. **Commonwealth v. Reid**, 99 A.3d 470, 484 (Pa. 2014) (citation omitted). Second, if the defendant makes this showing, the burden shifts to the prosecutor to articulate a race–neutral explanation for his peremptory challenges. **Id.** This explanation need not be persuasive, or even plausible. **Commonwealth v. Towles**, 106 A.3d 591, 601 (Pa. 2014). "Rather, the issue at that stage is the facial validity of the prosecutor's explanation." **Id.** (citation omitted). "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."

---

[8] Arguably, this ruling was incorrect, because at the time of Appellant's **Batson** challenge, four of the eight impaneled jurors were African-American. **See Commonwealth v. Johnson**, 139 A.3d 1257, 1283 (Pa. 2016) (presence of seven African-Americans on jury supported finding of no *prima facie* case of racial discrimination); **Commonwealth v. Spotz**, 896 A.2d 1191, 1212-13 (Pa. 2006) (prosecutor's acceptance of eight women jurors, four of whom were empaneled and four of whom were struck by defense, supported finding of no gender discrimination).

***Commonwealth v. Williams***, 980 A.2d 510, 530 (Pa. 2009) (citation omitted).

Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.[9] ***Id.*** We accord "great deference" to this determination and will not overturn it unless it is "clearly erroneous." ***Commonwealth v. Roney***, 79 A.3d 595, 619 (Pa. 2013) (such deference is appropriate because trial court "viewed the demeanor and heard the tone of voice of the attorney exercising the challenge," and is therefore "uniquely positioned to make credibility determinations").

Guided by these standards, we examine the peremptory strikes to Juror Nos. 9, 25, 28 and 30. The prosecutor struck Juror No. 9 out of concern she might be sympathetic towards Appellant. When the trial court asked the juror whether she could be fair and impartial, she looked directly at Appellant, smiled, and "gave a big nod." N.T., 3/28/16, at 56-57, 116. This was a legitimate, race-neutral reason for striking her. ***See Towles***, 106 A.3d at 601 (prosecutor had non-discriminatory reason for dismissing

---

[9] Appellant's reliance on the more "flexible" approach proposed in ***Holloway v. Horn***, 355 F.3d 707 (3d Cir. 2004), is misplaced. Cases from the Third Circuit are not binding on this Court. ***See Commonwealth v. Clark***, 710 A.2d 31, 39 (Pa. 1998) ("[Pennsylvania Courts] are not bound by decisions of federal courts inferior to the United States Supreme Court"), *abrogated on other grounds by* ***Commonwealth v. Freeman***, 827 A.2d 385 (Pa. 2003). Our Supreme Court has repeatedly declined to follow ***Holloway***. ***See Commonwealth v. Jones***, 951 A.2d 294, 301 (Pa. 2008); ***Commonwealth v. Fletcher***, 861 A.2d 898, 910 n. 15 (Pa. 2004).

juror who, *inter alia*, "expressed affinity toward defense counsel and smiled at appellant").

When Juror No. 25 was asked whether she knew anyone who had been "a victim of crime," she answered that her father had been "arrested for selling narcotics." N.T., 3/28/16, at 102. The prosecutor understandably did not want jurors who considered defendants to be "victims," because the prosecutor intended to argue that drug dealing was the motive for this murder. *Id.* at 73. Appellant argues that Juror No. 25's reference to a drug dealer as a "victim" was merely the "result of nervousness." Appellant's Brief at 38. There is no evidence in the record that the juror was nervous. In any event, Appellant's beliefs about the juror do not demonstrate that the prosecutor lacked a race-neutral reason for striking her. ***Commonwealth v. Rico***, 711 A.2d 990, 996 (Pa. 1998) (fact that prospective juror appeared fearful was nondiscriminatory reason for striking him). The trial court properly accepted the prosecutor's race-neutral reason for striking Juror No. 25.

Juror No. 28 had previously been on a jury in a drug case. When asked about that experience, the juror referred to that prior defendant as a "gentleman." N.T., 3/28/16, at 109. The prosecutor explained that he "d[id not] want someone" on the jury "who thinks drug dealers are gentleman." *Id.* at 116. While there might be more persuasive rationales for striking a juror, it was within the trial court's discretion to find that this rationale was

race-neutral. *See Commonwealth v. Jones*, 668 A.2d 491, 519 n. 31 (Pa. 1995) (potential juror's relationship to persons arrested or convicted of crimes is legitimate non-discriminatory reason for striking them) (citations omitted); *Commonwealth v. Thompson*, 106 A.3d 742, 752 n. 10 (Pa. Super. 2014) (prosecutor had race-neutral reason for striking prospective juror who was drug and alcohol caseworker, because prosecutor believed she "would sympathize with Appellant") (citation omitted).

Finally, the prosecutor used a peremptory challenge to strike Juror No. 30 out of concern he would not be a competent juror. On his questionnaire, the juror indicated that he was both more and less likely to believe a police officer, and he failed to offer an explanation for this discrepancy. N.T., 3/28/16, at 112. The prosecutor reasoned that if the juror could not understand his responses were "mutually exclusive," he would not be able to handle the issues that were going to arise during trial. *Id.* at 115. This was a legitimate, race-neutral reason for striking him. *See Rico*, 711 A.2d at 996 (prosecutor's concern that prospective juror would not be able to "comprehend the facts of the case" was legitimate, ethnically neutral reason for striking her); *see also Towles*, 106 A.3d at 600-01 (prosecutor had non-discriminatory reason for dismissing jurors who, *inter alia*, "indicated [they] would be less likely to believe testimony from a police officer"). Appellant claims the prosecutor's reasons offered are "pretextual" by speculating about other possible explanations for Juror No. 30's answers,

e.g., that the jury questionnaire was supposedly "very confusing." Appellant's Brief at 37-38. The fact that Appellant disagrees with the prosecutor's reasons for striking this juror does not mean the prosecutor engaged in racial discrimination. The trial court acted within its discretion by permitting the prosecutor to strike a juror whom he thought appeared confused.

For these reasons, Appellant's **Batson** arguments fail.

In his fourth argument, Appellant contends that the trial court erred in denying his motion for a mistrial after the Commonwealth stated in its openings remarks that Appellant sold "poison on the streets," referring to drug trafficking. N.T., 3/29/16, at 19. The trial court denied Appellant's request and offered a curative jury instruction, but defense counsel declined. **Id.** at 88-92. Appellant argues that the remark was irrelevant, because drug trafficking was not a relevant factor in the case.

The court may grant a mistrial "[w]hen an event prejudicial to the defendant occurs during trial[.]" Pa.R.Crim.P. 605(B). A mistrial is a remedy of last resort; "[a] trial court is required to grant a mistrial only where the alleged prejudicial event may reasonably be said to have deprived the defendant of a fair and impartial trial." **Commonwealth v. Fortenbaugh**, 63 A.3d 191, 193 (Pa. 2013) (citation omitted). The decision to deny a mistrial is subject to review for abuse of discretion. **Id.**

Here, Appellant waived his motion for mistrial by failing to make this motion at the time of the prosecutor's remark. Instead, he waited until after the prosecutor finished, thirteen transcript pages later, before attempting to bring the remark to the court's attention. N.T., 3/29/16, at 32; *see* ***Commonwealth v. Smith***, 410 A.2d 787, 790 (Pa. 1980) (mistrial claim waived where request not made until two or three minutes after alleged prejudicial remark); ***Commonwealth v. Sasse***, 921 A.2d 1229, 1238 (Pa. Super. 2007) (mistrial claim waived where appellant did not challenge prosecutor's statement until after closing argument); ***Commonwealth v. Jones***, 543 A.2d 548, 550 (Pa. Super. 1988) (appellant's objection to prosecutor's improper remark must be contemporaneous with remark).

Even if Appellant preserved this issue for appeal, it is devoid of merit. A prosecutor's remarks do not warrant relief unless their unavoidable effect was "to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant." ***Commonwealth v. Paddy***, 800 A.2d 294, 316 (Pa. 2002) (citation omitted). The challenged remarks should not be viewed in isolation but in context. ***Commonwealth v. Smith***, 985 A.2d 886, 907 (Pa. 2009).

Appellant claims it was improper for the prosecutor to reference his drug trade because it supposedly was "only tangentially involved" in the case. Appellant's Brief at 42. We disagree. Appellant's drug trade was relevant because it established his motive for the murder and explained his

relationship with the Commonwealth's key witnesses. *See Commonwealth v. Stern*, 573 A.2d 1132, 1137 (Pa. Super. 1990) (prosecutor's references to defendant's involvement in drugs and gang violence were permissible in murder trial where drug dealing provided motive for murder); *Commonwealth v. Barnhart*, 434 A.2d 191, 193 (Pa. Super. 1981) (evidence of other crimes defendant committed with co-conspirator admissible to explain their relationship). Appellant shot the victim in supposed retaliation for allegedly stealing money that belonged to Appellant's drug organization that Appellant was supposed to pay back to his employers at the end of the night. N.T., 3/29/16, at 231. Ford explained at trial that it was common for "caseworkers" in their organization, like Appellant, to claim falsely they had been robbed so they could keep the money for themselves. *Id.* at 236. Based on this evidence, the Commonwealth argued that Appellant murdered a random victim to cover up his own theft and prove to his manager that he had been robbed. Moreover, even if Appellant's version was true and the decedent robbed him, this did not entitle Appellant to shoot him dead. As the trial court reasoned, "either way," Appellant's drug trade was "the impetus behind the shooting." Trial Ct. Op. at 9. Therefore, it was proper for the prosecutor to reference drug trafficking in his opening argument. *See Commonwealth v. Collins*, 70 A.3d 1245, 1254 (Pa. Super. 2013) (prosecutor did not commit misconduct

by arguing to jury that the killing was the result of an ongoing gang war; argument was permissible inference from evidence submitted during trial).[10]

In his fifth argument, Appellant contends that the trial court abused its discretion by permitting the Commonwealth to present prosecutors Emily Rodriguez and Edward Cameron to testify about cooperation agreements with Robinson.

The "admissibility of evidence is a matter directed to the sound discretion of the trial court, and an appellate court may reverse only upon a showing that the trial court abused its discretion." ***Commonwealth v. McCloskey***, 835 A.2d 801, 809 (Pa. Super. 2003) (citation omitted). The Commonwealth properly presented Rodriguez and Cameron, Assistant Chief of the Homicide Unit, in response to defense counsel's question to Robinson about whether he may have received deals in exchange for his testimony. N.T., 3/29/16, at 200-02. Rodriguez testified that in February or March of 2015, she conveyed an offer to Robinson for possession with the intent to deliver, but that at the time of the offer, she had no knowledge of the case at bar. N.T., 3/30/16, at 8-13. Cameron testified that he reviewed the file for the present case to see whether he, Cameron, or any other chief in the

---

[10] It also deserves mention that Appellant declined a curative instruction, N.T. 3/29/16, at 89, which could have cured any imagined prejudice. This further supports the trial court's conclusion that a mistrial was unnecessary. ***See Commonwealth v. Johnson***, 668 A.2d 97, 105 (Pa. 1996) ("Appellant cannot now claim the trial court erred in refusing to take an action when the basis for the court's inaction was counsel's failure to pursue the offer of the curative instruction").

District Attorney's Office approved a cooperation agreement for Robinson. *Id.* at 19-21. He found no agreement. *Id.*

Appellant claims this testimony was unfairly prejudicial because it supposedly had the "impermissible tendency to vouch for Robinson's credibility." Appellant's Brief at 45. Rodriguez and Cameron, however, did not offer any opinion on Robinson's truthfulness; they merely denied Appellant's claim that they had struck a "deal" with Robinson. *See Commonwealth v. Reid*, 99 A.3d 427, 447-48 (Pa. 2014) (rejecting claim that prosecutor improperly vouched for witness's credibility by referencing terms of witness's plea agreement; prosecutor made no "personal assurances" as to the "veracity of [the witness]'s testimony"). Since Appellant had opened the door to this issue, the Commonwealth had the right to respond. *See Commonwealth v. Williams*, 896 A.2d 523, 541-42 (Pa. 2006) (where defense used terms of witness's plea agreement to call into question the witness's "motivations for testifying," he cannot complain that "the Commonwealth impermissibly bolstered [the witness]'s credibility by rebutting his line of questioning").

In his sixth issue, Appellant argues that the trial court abused its discretion by permitting Detective Frank Mullen to read a portion of Ford's statement into the record in which Ford identified Appellant in a photo array and identified himself in a photograph recovered from video surveillance footage recorded near the time of the murder. Appellant argues that this

testimony was inadmissible hearsay. We conclude that this testimony was admissible to show the detective's course of conduct in investigating the case. Therefore, no relief is due.

Hearsay is defined as "an out-of-court statement offered to prove the truth of the matter asserted in the statement." *Commonwealth v. Kuder*, 62 A.3d 1038, 1055 (Pa. Super. 2013) (citation omitted). Hearsay is generally deemed unreliable because "the declarant is not before the trier of fact and cannot be challenged as to the accuracy of the statement." *Commonwealth v. Rush*, 605 A.2d 792, 795 (Pa. 1992) (citation omitted). Evidence is not hearsay, however, when the proponent introduces it to explain a course of conduct. *See Commonwealth v. Trinidad*, 96 A.3d 1031, 1037 (Pa. Super. 2014) (trial court properly permitted detective to testify to witness's identification of Appellant as the perpetrator, where testimony was offered only "to explain the detective's course of conduct in questioning Appellant"); *Commonwealth v. Hardy*, 918 A.2d 766, 777 (Pa. Super. 2007) (out-of-court statements offered "to explain the course of conduct undertaken by an investigating police officer" are not hearsay).

Detective Mullen testified that he applied for the arrest warrant for Appellant, and the prosecutor asked him to describe "the evidence . . . that led [him] to apply" for that warrant. N.T., 3/30/16, at 31. He explained that he had first recovered video surveillance footage from neighboring businesses, *Id.* at 33-45, and then interviewed Robinson, who identified

Appellant as the shooter. *Id.* at 46-54. Based on the information Robinson provided, Detective Mullen interviewed Ford. *Id.* at 54. He testified that Ford had identified himself in a photograph recovered from the video surveillance footage and picked out Appellant from a photo array. *Id.* at 55-57. Only after speaking with Ford did he obtain an arrest warrant for Appellant and search warrants that led to the discovery of ammunition in Appellant's house. *Id.* at 58-59, 66.

The Commonwealth did not offer Ford's out-of-court statement to prove that Ford in fact identified Appellant. Ford's own testimony had already established his identification of Appellant. N.T., 3/29/16, at 244-47. Instead, the purpose for offering Ford's statement was to demonstrate Detective Mullen's course of conduct in investigating the case. Therefore, it was admissible.

Citing *Commonwealth v. Tann*, 459 A.2d 322 (Pa. 1983), Appellant also argues that Detective Mullen's testimony was improper because it had "the tendency to bolster" Ford's credibility. Appellant's Brief at 49. The Supreme Court held in *Tann* that trial counsel was ineffective for failing to object to the testimony of two Commonwealth witnesses on the ground of relevance. *Id.* at 328. Here, Appellant does not dispute that Detective Mullen's testimony was relevant, so his reliance on *Tann* is misplaced.

Appellant also asserts that a detective does not "[o]rdinarily . . . read another Commonwealth's witness['s] statement to show the course of

conduct." Appellant's Brief at 48. We do not find this persuasive. Regardless of whether the evidence is not what Appellant believes the Commonwealth "ordinarily" presents, it is still admissible.

In his seventh and final argument, Appellant claims that the trial erred by denying his request for a jury instruction concerning bias of Commonwealth witnesses. More specifically, he requested the trial court to instruct the jury that "you should accept this witness's testimony with caution if you determine that they are testifying in the hope of [favorable treatment from the Commonwealth]." N.T., 3/30/16, at 4-5. Appellant argues that the instruction that the trial court gave did not cover witness bias issues. We disagree.

The trial court chose to give the jury the following instructions:

> You [the jury] must consider and weigh the testimony of each witness and give it such weight as in your judgment it's fairly entitled to receive. The matter of the credibility of a witness, that is, whether the witness' testimony is believable and accurate in whole or in part, is solely for your determination. I'm now going to mention some of the factors which might bear on that determination.
>
> Whether the witness has any interest in the outcome of the case or has a friendship or animosity toward other persons concerned in the case. The behavior of the witness on the witness stand. The witness'[s] demeanor, the witness'[s] manner of testifying and whether the witness shows any bias or prejudice[,] which might color that testimony. The accuracy of the witness'[s] memory and recollection. The witness'[s] ability and opportunity to acquire knowledge of or to observe the matters concerning which he or she testifies. The consistency or inconsistency of the testimony, as well as its reasonableness or

unreasonableness in light of all of the evidence in this case.

In deciding which of [the] conflicting testimony to believe, you should not necessarily be swayed by the number of witnesses. **You should consider whether the witnesses appear to be biased or unbiased whether they are interested or disinterested persons, and all other factors which go to the reliability of their testimony.** The important thing is the quality of the testimony of each witness. You should also consider the extent to which conflicting testimony is supported by other evidence. **Now, you heard evidence in this case that I believe both of the witnesses who testified, the civilian witnesses, had open criminal matters. And there was also some testimony that they were at various points either on probation or parole. The purpose for which you can consider an open case and the fact that they're on probation or parole is in determining the witness'[s] credibility. Remember, I touched upon this before. So when you consider this information for credibility, you may consider whether the witness had any potential bias or interest or whether he testified for the prosecution to gain favorable treatment in his own case**.

N.T., 3/30/16, at 146-47 (emphases added).

When reviewing a challenge to a trial court's refusal to give a jury instruction, an appellate court's task is to determine whether the trial court "abused its discretion or committed an error of law." *Commonwealth v. Clouser*, 998 A.2d 656, 658 (Pa. Super. 2010) (citation omitted). A trial court has broad discretion in fashioning its jury instructions so long as the law is clearly and accurately set forth. *Commonwealth v. Scott*, 73 A.3d 599, 602 (Pa. Super. 2013) (trial court is "not required to give every charge that is requested by the parties"). It should not confuse the jury by

instructing them on "legal principles which have no application to the facts presented at trial." **Commonwealth v. Buterbaugh**, 91 A.3d 1247, 1257 (Pa. Super. 2014) (*en banc*) (citation omitted).

The trial court's instruction was satisfactory. The court listed several factors the jury should consider in weighing the testimony of each witness, including "[w]hether the witness has any interest in the outcome of the case" or "shows any bias . . . which might color" their testimony. N.T. 3/30/16, at 146; **see Commonwealth v. Slyman**, 483 A.2d 519, 529 (Pa. Super. 1984) (jury instruction was "adequate[]" where it advised the jurors to consider "any interest that the witnesses may have in the outcome of the case"). The trial court also reminded the jury that they had heard testimony that both civilian witnesses had "open criminal matters," and advised them to consider those open cases in determining the witnesses' credibility. N.T., 3/30/16, at 149. It specified that the open cases could go to "whether the witness had any potential bias or interest," or "whether he testified for the prosecution to gain favorable treatment in his own case." **Id.** This language captured the essence of the instruction requested by Appellant. The mere fact that the trial court did not use the precise words Appellant preferred is not a basis for relief. **See Scott**, 73 A.3d at 602 ("[court's] refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal").

Accordingly, we affirm Appellant's convictions for third degree murder, possession of an instrument of crime and carrying firearms without a license. We reverse Appellant's conviction under 18 Pa.C.S. § 6105. Reversal of this conviction, however, does not upset Appellant's sentencing scheme, because the trial court did not impose any penalty for this offense. Accordingly, it is not necessary to remand this case for resentencing.

Judgment of sentence affirmed in part and reversed in part. The convictions for third degree murder, possession of an instrument of crime and carrying firearms without a license are affirmed. The conviction under 18 Pa.C.S. § 6105 is reversed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/13/2017