J-A12014-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MUSA ABDUR-RAHIM | : | |
| | : | |
| Appellant | : | No. 1059 EDA 2023 |

Appeal from the Judgment of Sentence Entered March 31, 2023
In the Court of Common Pleas of Pike County
Criminal Division at No(s): CP-52-CR-0000688-2019

BEFORE: PANELLA, P.J.E., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.:               **FILED AUGUST 20, 2024**

Musa Abdur-Rahim ("Appellant") appeals from the aggregate judgment of sentence[1] of 23 to 52 years' incarceration following his convictions for numerous offenses including robbery and kidnapping. We affirm.

The trial court summarized the factual history of this matter as follows:

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Two months after Appellant filed his timely notice of appeal in this matter, the trial court purported to amend the sentence via order entered on August 25, 2023. However, since an appeal had been taken, the trial court lacked the authority to amend its initial sentencing order, and therefore this amendment was a legal nullity. **See** 42 Pa.C.S.A. § 5505 ("Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed"). While this Court may _sua sponte_ address matters concerning the legality of a sentence, we decline to do so here because we lack either the trial court's rationale or the advocacy of the parties as to this issue.

On November 18, 2019, [Appellant] and six others attempted to take control of the Administrative Center ("Clubhouse") of the Pine Ridge Residential Community ("Pine Ridge") located in Lehman Township, Pike County, Pennsylvania, by force. At approximately 12:45 p.m., the Pennsylvania State Police barracks in Blooming Grove, Pike County, received a call indicating that five males with firearms, later identified as Sekou Rashid-Abdullah, Sushane Adams-Heylinger, Adam Abdur-Rahim, Troy Sutton, and the Appellant (collectively, "Assailants"), had smashed windows to gain access to the Clubhouse and that office workers Shirley Kennedy ("Kennedy"), Shante Fountaine ("Fountaine"), and Community Manager William White ("White") were trapped inside. Evidence presented at trial showed that Anthony Bonito ("Chief Bonito"), Chief of Public Safety for Pine Ridge, was engaged in the community at the time and that John Derbyshire ("Derbyshire"), a Public Safety Officer, was inside the Clubhouse when the assault began.

As the Assailants forced entry to the upper level of the two-level Clubhouse, Kennedy, Fountaine, and White sheltered inside White's office located in the lower level. Meanwhile, Derbyshire secured the lower level and verbally confronted the Assailants through a heavy door as they attempted to force entry to the lower level via an indoor stairway. The Assailants then exited the upper level of the Clubhouse, forced entry to the lower level from the outside, confronted, disarmed, and forcibly detained Derbyshire inside the Public Safety Office. At some point, Chief Bonito returned and confronted the Assailants from just outside the Public Safety Office door, but retreated upon realizing that Derbyshire was being forcibly detained within. As Chief Bonito retreated to observe, report to, and eventually assist the Pennsylvania State Police, the Assailants ransacked the Public Safety Office, taking various items, including but not limited to body armor, weapons, vehicle keys, and walkie-talkies, before exiting with Derbyshire and returning to the Clubhouse parking lot. The Assailants then commandeered Derbyshire's truck, emptied it of his personal belongings, and attempted to leave Pine Ridge with Derbyshire in tow using their own two vehicles, Derbyshire's private vehicle, and a Pine Ridge Public Safety vehicle using keys taken from the Public Safety Office. The Assailants, including the Appellant, then attempted to drive out of Pine Ridge using the only available road but were blocked by Pine Ridge maintenance workers and eventually taken into custody by responding Pennsylvania State Police Troopers.

Trial Court Opinion, 8/25/23, at 1-2 (footnote and repetition of amounts in numerical form omitted).

Appellant was subsequently charged with thirty-four separate crimes relating to his role in the incident. The Commonwealth filed a notice to jointly try Appellant with his co-defendants.

The parties first attempted to select a jury on September 13, 2021. After several jurors were struck for cause, the defense attorneys made a joint motion to dismiss the panel. The court granted the motion and continued jury selection for a later date.

Following resolution of numerous pretrial motions filed by Appellant, the parties selected a jury and trial was set to begin on January 26, 2023. Several days before, the Commonwealth filed a motion in limine to preclude evidence or testimony concerning ownership of the lands upon which Pine Ridge was located, asserting that such evidence was irrelevant to the charges and was likely to confuse the jury. The motion was filed in anticipation of a claim of right defense—that the defendants were rightfully entitled to retake the land on behalf of Tonia Scott, a woman proclaiming to own the land based on her native ancestral heritage. The Commonwealth relied on ***Commonwealth v. Dombrauskas***, 418 A.2d 493 (Pa. Super. 1980), for the principle that, even if Tonia Scott were the rightful owner of the land, she would not be entitled to employ force to retake property under a claim of right. After argument, the court granted the motion to preclude such evidence.

Trial began on January 26, 2023. On February 3, 2023, the jury delivered a verdict finding Appellant guilty of one count each of kidnapping, false imprisonment, and unlawful restraint, six counts of robbery, one count each of robbery of a motor vehicle, theft by unlawful taking, criminal attempt to commit theft by unlawful taking, and burglary, three counts of terroristic threats, two counts of simple assault, and one count of recklessly endangering another person.

On March 31, 2023, the trial court sentenced Appellant to an aggregate sentence of 23 to 52 years' incarceration. No post-sentence motions were filed. This timely appeal followed.

Appellant raises the following issues in his statement of questions presented:

> 1. Did the trial court err and abuse its discretion by denying [Appellant]'s change of venue motion?
>
> 2. Did the trial court err and abuse its discretion by refusing to recuse itself?
>
> 3. Did the trial court err and abuse its discretion by not allowing [the] "mistake of fact" jury instruction?
>
> 4. Did the trial court err and abuse its discretion during the jury selection process?
>
> 5. Did the trial court err by declaring Tonia Scott unavailable to testify, then not allowing the defense to play Tonia Scott's police video interview for the jury?
>
> 6. Did the trial court err and abuse its discretion by granting the Commonwealth's untimely motion in limine?

7. Did the trial court err and abuse its discretion by granting the Commonwealth's motion in limine regarding voir dire questioning related to race and religion?

Appellant's Brief, at 2-3 (suggested answers, footnote, and unnecessary capitalization omitted). In the argument section of his brief, Appellant concedes that he has waived his second issue related to recusal. As such, we do not address that issue.

Appellant first contends the court erred in denying his motion for change of venue. Our standard of review relating to the trial court's denial of a motion for a change of venue "is whether there has been an abuse of discretion on the part of the trial judge." *Commonwealth v. Devries*, 112 A.3d 663, 666 (Pa. Super. 2015) (citation omitted). It is axiomatic that "[v]enue or venire may be changed by th[e] court when it is determined after hearing that a fair and impartial trial cannot otherwise be had in the county where the case is currently pending." Pa.R.Crim.P. 584(A). The Pennsylvania Supreme Court has stated "the trial court is in the best position to assess the atmosphere of the community and to judge the necessity of any requested change." *Commonwealth v. Briggs*, 12 A.3d 291, 313 (Pa. 2011) (citation omitted).

Further, in addressing this type of claim, this Court has observed the following:

> For pre-trial publicity to be presumptively prejudicial, a defendant must prove, inter alia, that the publicity was so extensive, sustained, and pervasive without sufficient time between publication and trial for the prejudice to dissipate, that the community must be deemed to have been saturated. The publicity must be . . . inflammatory and slanted toward conviction

rather than factual and objective. Finally, even if there has been inherently prejudicial publicity which has saturated the community, no change of venue is warranted if the passage of time has sufficiently dissipated the prejudicial effects of the publicity.

*Commonwealth v. Tanner*, 205 A.3d 388, 393 (Pa. Super. 2019) (citations, internal quotation marks, and brackets omitted).

Appellant's entire argument in this regard is as follows:

Here, Pike County is less than 85 miles from ground zero in New York City. The Pike County Prothonotary/Clerk of Courts Office has an American Flag created from the names of those who died during the September 11, 2001, terrorist attacks. The defendant's name, Musa Abdur-Rahim, is an Arabic name. The Commonwealth included a charge of "Terrorism" (a violent offense intending to intimidate or coerce a civilian population). The first attempt at jury selection occurred during September 2021. When it became obvious that a fair and impartial jury could not be found, the trial court granted a defense motion to dismiss the entire panel. During voir dire, juror no. 3 said "[y]ou here [sic] terrorism, 9-11 is the first thing that comes to your mind." Similarly, juror no. 15, in response to a question about personal thoughts about terrorism, said the [quiet] part aloud, "[O]bviously the first thing that probably most Americans think of is 911 . . . when they hear of terrorism."

The dismissal of the entire first panel, the locale of Pike County, the Defendant's name, the charge of Terrorism, and the strong feelings this community has regarding the 911 terrorist attacks creates the likelihood that the Defendant's due process rights were violated when the trial court denied the Defendant's change of venue motion.

Appellant's Brief, at 7-8 (footnotes omitted).

Appellant initially filed a motion for change of venue on March 2, 2020, which was denied. Two years later, and after the initial jury panel was dismissed, Appellant filed an amended motion for change of venue. In

- 6 -

rejecting the instant claim, the trial court recounted that at hearings on Appellant's motions for change of venue, Appellant offered only argument, no testimony or other evidence. **See** Trial Court Opinion, 8/25/23, at 6. It concluded Appellant "failed to show that a fair and impartial jury could not be selected in Pike County, and failed to show that pretrial prejudice should be presumed …". **Id**.

We conclude the court did not abuse its discretion in denying Appellant's motion for change of venue. Appellant simply imputes bias to the jury based upon a panel that was dismissed approximately eighteen months earlier. Appellant neglected to discuss how the prior jury selection supported a current finding of "extensive, sustained, and pervasive" pre-trial publicity. **Tanner**, 205 A.3d at 393 (citation omitted).

Even if we assume *arguendo* that there was pre-trial publicity that was presumptively prejudicial, Appellant does not argue that this notoriety did not dissipate in the three years between the time of the incident and commencement of trial, or the year and one-half between the first jury selection and the latter. **See, e.g.**, **Commonwealth v. Walter**, 119 A.3d 255, 281 (Pa. 2015) (finding that "the 11–month period between the latest of the submitted publicity and [a]ppellant's trial was sufficient to dispel any prejudice against her") (citation omitted).

Appellant's next issue relates to his mistake of fact defense. Specifically, he contends the trial court erred in granting the Commonwealth's motion in

limine concerning evidence of ownership of the land upon which Pine Ridge was established. *See* Appellant's Brief, at 10.

We review the admission or exclusion of evidence under the following standard:

> It is well settled that evidentiary rulings are within the sound discretion of trial courts. Accordingly, when a party adverse to a trial court's evidentiary ruling seeks appellate review of that determination, that party carries a heavy burden to demonstrate that the trial court abused its discretion. An appellant cannot meet this burden by simply persuading an appellate court that it may have reached a different conclusion than that reached by the trial court; rather, to overcome this heavy burden, the appellant must demonstrate that the trial court actually abused its discretionary power.

*Commonwealth v. DiStefano*, 265 A.3d 290, 297 (Pa. 2021) (citations and quotation marks omitted).

Similarly, "[o]ur standard of review when considering the denial of jury instructions is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." *Commonwealth v. Yale*, 150 A.3d 979, 983 (Pa. Super. 2016) (citation omitted).

In addressing this issue, the trial court held evidence concerning historical ownership of the land was irrelevant. *See* Trial Court Opinion, 8/25/23, at 8. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Pa.R.E. 401(a)-(b). As a general rule, all relevant evidence is admissible and all irrelevant evidence is inadmissible.

*See* Pa.R.E. 402. However, even relevant evidence may be excluded if its probative value is outweighed by the danger of confusing the issues, misleading the jury, or causing undue delay. *See* Pa.R.E. 403.

The trial court considered this Court's decision in ***Dombrauskas*** in making its relevance determination. *See* Trial Court Opinion, 8/25/23, at 8. There, the defendant, believing that he was swindled during a card game, forcibly took money from the victim at knifepoint. At trial, the defendant sought a jury instruction stating he "could not be guilty of theft if he believed that he had a right to retake money taken from him by cheating in a game of cards." ***Dombrauskas***, 418 A.2d at 496. The trial court denied the request. We affirmed the denial on appeal, reasoning as follows:

> [A] claim of right defense is not available to one who employs force or stealth to recoup money lost in a gambling game or to collect an unliquidated debt. Disputed claims of this type are better resolved in a court of law than by violence or stealth.

*Id*. at 497 (citations omitted). Accordingly, we held:

> the proper forum for resolving gambling disputes is a court of law pursuant to legal process. If one resorts to his own resources to take money physically from another in such instances, public policy precludes the assertion of a claim of right defense to a charge of theft by unlawful taking.

*Id*.

Here, the trial court extended the holding in ***Dombrauskas*** to apply to real property, stating as follows:

> [F]actual evidence on the ownership of land upon which Pine Ridge was established had no bearing upon the crimes alleged and [] the Appellant's understanding of that fact could not negate the

> intent required to establish any element of any charge against him. In other words, the ownership of the land upon which Pine Ridge is situate[d] is irrelevant because the Appellant was not privileged to take the action(s) he was accused of, even if he was the rightful owner of Pine Ridge.

*See* Trial Court Opinion, 8/25/23, at 8. Accordingly, the court maintained it properly granted the Commonwealth's motion in limine as to the ownership of the land and denied Appellant's mistake of fact instruction request.

Appellant fails to develop any argument in response other than making a conclusory claim that the trial court's reliance on ***Dombrauskas*** is contrary to the holding in ***Commonwealth v. Scott***, 73 A.3d 599 (Pa. Super. 2013).

First, we find Appellant's reliance on ***Scott*** is misplaced. There, this Court determined the trial court erred in refusing to give a jury instruction when the mistake of fact related to the identity of the person shot by the defendant. The defendant fired a handgun toward someone he believed was an invader in self-defense during a shootout, but unintentionally struck a friend. ***See Scott***, 73 A.3d at 601. At trial, the defendant asserted two separate defenses: (1) self-defense as to the attempted murder charges relating to the invader and (2) mistake of fact concerning the aggravated assault and REAP charges applicable to the friend. We concluded that "[b]ecause it is possible that the jury might have accepted [Scott]'s mistake-of-fact defense theory, thereby acquitting him of aggravated assault and REAP, we find that the omission prejudiced [Scott], requiring a new trial." ***Id***. at 605 (citation omitted). The holding was dependent upon the notion that the

mens rea of "recklessness" in aggravated assault and REAP could be completely negated when coupled with the corresponding self-defense theory.

That is not the case here, where, regardless of ownership of the property, Appellant was not entitled to kidnap, rob, assault, and possess a firearm, even if his mistake of fact defense was believed. In this case, Appellant had no relevant or applicable mistake-of-fact defense theory, thereby rendering **Scott** clearly distinguishable.

On review, we agree with the trial court's well-written opinion that the evidence was irrelevant. Notably, Appellant does not discuss any of his convictions as it relates to this issue. Accordingly, Appellant does not assert any particular element or the mens rea for any conviction would be negated with this information, even assuming he reasonably believed Tonia Scott owned the property in question. Nor does he argue this information would be "a fact of consequence" regarding any of his convictions. Pa.R.E. 401(b).

Appellant has simply made no connection between the evidence of ownership of Pine Ridge and the elements of the crimes of which he was convicted. We will not develop arguments on behalf of an appellant. **See Coulter v. Ramsden**, 94 A.3d 1080, 1088 (Pa. Super. 2014). "While this Court may overlook minor defects or omissions in an appellant's brief, we will not act as his or her appellate counsel." **Commonwealth v. Freeman**, 128 A.3d 1231, 1249 (Pa. Super. 2015) (citation omitted). Accordingly, Appellant is not entitled to relief on this claim.

In his next issue, Appellant argues the trial court erred and abused its discretion during the jury selection process.

"[T]he jury selection process is crucial to the preservation of [a criminal defendant's] right to an impartial jury [explicitly] guaranteed by Article I, § 9 of the Pennsylvania Constitution." ***Commonwealth v. Hunsberger***, 58 A.3d 32, 38 (Pa. 2012) (citation omitted). "The decision whether to disqualify a venireman is within the discretion of the trial court and will not be disturbed on appeal absent a palpable abuse of that discretion." ***Commonwealth v. Ingber***, 531 A.2d 1101, 1103 (Pa. 1987) (citations omitted).

The purpose of examining prospective jurors is to "ascertain[ ] whether the venireperson is competent and capable of rendering a fair, impartial and unbiased verdict." ***Commonwealth v. Penn***, 132 A.3d 498, 502 (Pa. Super. 2016) (citation omitted). "[T]he test of disqualification is the juror's ability and willingness to eliminate the influence of his scruples and render a verdict according to the evidence." ***Id***. (citation omitted). In other words, the relevant inquiry "is whether any biases or prejudices can be put aside upon the proper instruction of the court." ***Id.*** (citation omitted).

The decision whether to disqualify a prospective juror "is to be made by the trial judge based on the juror's answers and demeanor and will not be reversed absent a palpable abuse of discretion." ***Id***. (citation omitted). Appellate courts defer to the trial court's assessment of a prospective juror's answers during voir dire because the trial court is "in the best position to

assess the [prospective juror's] credibility and fitness to serve[.]" ***Commonwealth v. Cox,*** 983 A.2d 666, 683 (Pa. 2009) (citation omitted).

Most importantly, we should give great weight to the trial court judge's decision about striking jurors because the trial court judge not only hears the words that the potential juror speaks, but also the manner in which the juror says those words and is in a better position than an appellate court to evaluate the significance of any hesitancy of a potential juror:

> The juror appears before the trial judge, who sees him and hears what is said; and is able to form his opinion as much from the proposed juror's conduct as from the words which he utters, printed in the record. Hesitation, doubt, and nervousness indicating an unsettled frame of mind, with other matters, within the judge's view and hearing, but which it is impossible to place in the record, must be considered. As it is not possible to bring these matters to our attention, the trial judge's view should be given great weight in determining the matters before him.

***Shinal v. Toms***, 162 A.3d 429, 442 (Pa. 2017) (citation and brackets omitted).

Ultimately, Appellant argues that jurors 25 and 49 should have been stricken for cause. Appellant's counsel moved to strike both jurors for cause. After the court denied both requests, Appellant used his final two peremptory challenges to strike those jurors. The trial court agrees that Appellant and his co-defendants used all of their peremptory challenges during voir dire. However, the court was "not persuaded that Appellant's counsel effectively demonstrated that any potential juror possessed a fixed, unalterable opinion

that would prevent him from rendering a verdict based solely on the evidence and the law." Trial Court Opinion, 8/25/23, at 9. We agree.

Appellant argues juror 25 should have been stricken for cause because he had a career in law enforcement and "said that he would believe the testimony of a police officer before he would believe the defendant." Appellant's Brief, at 16.[2] Meanwhile, Appellant argues juror 49 should have been stricken for cause because he served in the middle east and related the nexus between terrorism and the death of three members of his unit. Additionally, Appellant claims that juror 49's responses during voir dire showed prejudice toward the Muslim community and their link to terrorism.[3]

Appellant has simply failed to demonstrate that these jurors possessed a fixed, unalterable opinion that would prevent them from rendering a verdict based solely on the evidence and the law. After a review of the record, including especially the above jurors' responses to all questions posed to them, we cannot conclude the record demonstrates that the court erred in not striking these jurors for cause.

_____

[2] We do not read juror 25's testimony as stating such a direct belief. Rather, juror 25 clarified that he is a retired police officer and in general believed that most police officers inherently tell the truth. **See** N.T., 1/19/23, at 177. He stated that, in his experience, he has not known an officer to lie, but did experience defendants lying in the past. **See id**. at 181. However, when asked if he would "be able to follow the law taking everyone equally whether they were a police officer or not," juror 25 answered affirmatively. **Id**. at 188-89.

[3] Notably, Appellant fails to give any specific examples of such prejudice. On review, we do not read juror 49's testimony to show any such prejudice.

In his fifth issue, Appellant argues the trial court erred by declaring Tonia Scott unavailable to testify and then not allowing the defense to play Scott's police video interview for the jury.

The defense filed a motion to call Tonia Scott as a witness. Due to the outstanding charges against her in her severed case, the court conducted on-the-record questioning of Scott regarding her awareness of her constitutional rights, specifically waiver of her right to remain silent under Article 5 of the United States Constitution, and Article 1, Section 9 of the Pennsylvania Constitution. After questioning, the court found that Scott had not made a knowing, intelligent and voluntary waiver of her constitutional right to remain silent. *See* N.T., 1/31/23, at 34. Defense counsel for each co-defendant then joined in an oral motion to allow video to be played in which Scott provided a statement to police. The court denied the request.

Appellant fails to meaningfully discuss or include any legal analysis of this claim. *See* Pa.R.A.P. 2119(a); *Estate of Haiko v. McGinley*, 799 A.2d 155, 161 (Pa. Super. 2002) ("The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority.") (citations omitted); *see also In re S.T.S., Jr.*, 76 A.3d 24, 42 (Pa. Super. 2013) ("When an appellant fails to develop his issue in an argument and fails to cite any legal authority, the issue is waived. [M]ere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of a matter.") (internal

citations and quotation marks omitted). We will not develop arguments on behalf of an appellant. *See Ramsden*, 94 A.3d at 1088. Accordingly, we find this issue waived.

In his next issue, Appellant asserts the trial court erred and abused its discretion by granting the Commonwealth's untimely motion in limine. Appellant's entire argument in this regard consists of only 4 sentences. *See* Appellant's Brief, at 20-21. Other than baldly asserting that the trial court heard the motion in limine after the deadline, Appellant does not assert why this was error or how he was prejudiced by any such error. The argument section of Appellant's brief is devoid of any discussion or legal analysis of this claim. Accordingly, we deem Appellant's claim waived for failure to develop the issue. *See* Pa.R.A.P. 2119(a); *McGinley*, 799 A.2d at 161; *see also Ramsden*, 94 A.3d at 1088; *In re S.T.S., Jr.*, 76 A.3d at 42.

In his final issue, Appellant argues the trial court erred and abused its discretion by granting the Commonwealth's motion in limine regarding voir dire questioning related to race and religion. Similar to the last two issues, we find Appellant's argument on this issue is woefully underdeveloped. Other than citing the general purpose of a motion in limine, Appellant fails to cite to any pertinent legal authority for this specific issue, i.e. excluding specific questioning during voir dire.

Here, the trial court granted the Commonwealth's motion in limine and excluded racial and religious questions during voir dire. As far as we can

discern, Appellant does not challenge the entirety of the trial court's decision. Rather, Appellant simply states that the trial court focused too much on racial considerations and not enough on the religious implications. Appellant concedes, however, that religious implications were not entirely ignored, as he quotes the trial court as reasoning that "the factors of race and religion of the perpetrators and the victims would not be emphasized by the evidence presented at trial." **See** Appellant's Brief, at 22 (citing to Trial Court Opinion, 8/25/23, at 12). Notably, Appellant does not contest this finding or advance a reason as to why this case might be racially or religiously sensitive.

While race may have been a controlling factor in the court's decision, it is clear that the topic of religion was also considered. Appellant has simply not explained how the trial court erred in this regard. Accordingly, we find this issue waived. **See** Pa.R.A.P. 2119(a); **McGinley**, 799 A.2d at 161; **see also Ramsden**, 94 A.3d at 1088.

As we find Appellant's issues are either waived or without merit, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/20/2024

- 17 -